Argued May 6, affirmed September 13, 1977

O'TOOLE et al, *Appellants,*
*v.*
FRANKLIN et al, *Respondents.*
(TC 76-1447-L-3, SC 24761)
569 P2d 561

William V. Deatherage of Frohnmayer & Deatherage, Medford, argued the cause for appellants. With him on the briefs was James L. Sutherland.

William L. Hallmark, Portland, argued the cause for respondents. With him on the brief were Jones, Lang, Klein, Wolf & Smith, Frank Josselson, Lynda D. Nelson, Portland, and John P. Cooney of Denman & Cooney, Medford.

LINDE, J.

**LINDE, J.**

### I

In a number of recent decisions, this court has followed the "English rule," first adopted in this state in 1896, that an action for the malicious prosecution of civil proceedings requires a showing of "special injury" beyond the trouble, cost, and other consequences normally associated with defending oneself against unfounded legal charges. *Mitchell v. Silver Lake Lodge,* 29 Or 294, 45 P 798 (1896) (wrongful attachment); *Buck v. Gale,* 271 Or 90, 530 P2d 1248 (1975), and cases there cited.[1] The present appeal asks us to reconsider this rule.

The appeal is from an order sustaining a demurrer to plaintiffs' complaint for failure to state a cause of action. The complaint alleged, in summary, that appellants are practicing physicians and partners in the Medford Clinic; that in July 1974, the respondent attorneys commenced a medical malpractice action against them on behalf of the respondent Mathis, alleging that the physicians had administered certain drugs to Mr. Mathis in 1972; that upon learning of this action the physicians informed Mr. Mathis and his attorneys that they had not treated Mathis during the period in question and repeatedly asked that the action be dismissed, but that it was not dismissed until January 1975; and that the action was prosecuted maliciously and without probable cause despite respondents' knowledge that the physicians had not administered any drugs to Mathis. The first count of the complaint continued with an allegation that prosecution of the malpractice action injured appellants' professional reputation "to their special injury in the sum of $50,000," and that they were entitled to exemplary and punitive damages in the sum of $200,000. A second count added allegations of negli-

---

[1] *Donovan v. Barnes,* 274 Or 701, 548 P2d 980 (1976), extended the requirement to an action alleging the malicious initiation of administrative proceedings.

gence on the part of Mathis in not informing his attorneys that appellants did not treat him during the period in question, and on the part of the attorneys in not properly investigating the case and advising Mathis that he had no just claim against them, but rather inciting him to commence the malpractice action. It also added a demand for $50,000 general damages for "emotional disturbance and anguish." Upon respondents' demurrer, the trial court held that these allegations did not state a cause of action against either Mathis or his attorneys, and appellants declined to plead further.

## II

On appeal, the doctors argue first that the asserted damage to their professional reputations from the unfounded charge of malpractice should be recognized as the kind of extraordinary harm contemplated by the "special injury" required for the tort of wrongful (or "malicious") prosecution of a civil action.[2] It may be conceded that "special" is not the most self-explanatory of terms. This court has found the requirement satisfied when the chosen proceeding itself involved immediate interference with the person, property, income, or credit of the subsequent complainant, apart from the ultimate judgment, as in the use of garnishment, *Alvarez v. Retail Credit Ass'n,* 234 Or 255, 381 P2d 499 (1963), attachment, *Crouter v. United Adjusters, Inc.,* 259 Or 348, 485 P2d 1208 (1971), or involuntary bankruptcy, *Balsiger v. American Steel,* 254 Or 204, 212, 451 P2d 868, 458 P2d 932, 40 ALR3d 289 (1969). That is consistent with decisions of other courts which follow the English rule. See 52 Am Jur 2d "Malicious Prosecution" § 11. This view focuses on the defendant's responsibility for his choice, as plaintiff in the earlier action, to trigger the interfering procedure; in the later action the "special injury is determined by the manner of the defendant's prose-

---

[2]The Restatement of Torts describes the tort as "wrongful civil proceedings," including their "initiation, continuation or procurement." Restatement of Torts § 674.

cution of the original case rather than by any happenstance of the plaintiff's situation." *Buck v. Gale, supra,* 271 Or at 94. "Special injury" in this procedural sense excludes the kind of secondary consequences that are a common and often unavoidable burden on defendants in "all similar causes," *id.* at 92, quoting *Balsiger v. American Steel, supra,* 254 Or at 206. But beyond immediate legal interference, the court has also recognized exceptionally sensitive proceedings as actionable if maliciously instituted, e.g., insanity proceedings, *Hill v. Carlstrom,* 216 Or 300, 338 P2d 645 (1959), and it has left open the possibility that "special injury" might be claimed when a defendant is on notice that the claimant whom he wrongfully subjected to legal proceedings was uniquely vulnerable to being harmed thereby, beyond the ordinary hardships of similar cases. *Donovan v. Barnes, supra,* 274 Or at 712-713.

■ The present plaintiffs have pleaded neither of these elements; their claim of "special injury" to professional reputation is one that would be common to most professional malpractice actions. They offer a two-step argument for nevertheless recognizing this injury as a basis of liability for malicious civil proceedings: One, that recovery for injury to reputation from bad-faith litigation is the necessary counterpart of the litigant's privilege against liability for defamation; and two, that a remedy for an injury to reputation in some form is required by the constitution. If such an injury is not recognized as "special," they argue, then the requirement of a "special injury" should be abandoned altogether.

The Restatement of Torts, as appellants point out, recognizes that a plaintiff's privilege to accuse a defendant finds its limit in the defamed party's potential recovery for "wrongful initiation of the proceedings," Restatement, Torts, § 587, Comment a. Recovery for injury to reputation in such an action is not inconsistent with Oregon cases, if the elements of the

[ 517 ]

action are otherwise made out; the difference is that the Restatement does not adopt "special injury" as one of the elements. Restatement, Torts, §§ 674, 681(b); *cf. Balsiger v. American Steel, supra; Donovan v. Barnes, supra.* Appellants' main argument is that this court should also drop that element from the tort of malicious prosecution of civil proceedings. The case is fairly and candidly presented as a suggestion for a judicial change in the established rule on policy grounds.

The "English rule" requiring some direct interference or other extraordinary injury is followed, at last count, by seventeen American jurisdictions, including Oregon.[3] Twenty-three states impose no such condition on the tort;[4] the remainder have not decided the issue. The rule has been criticized by Dean Prosser and, as we have said, rejected by the Restatement of Torts. The argument is that the mere award of costs to the successful defendant, without the attorney fees

---

[3] *Davis v. Boyle Bros.* (Mun Ct. App DC) 73 A2d 517 (1950); *Price v. Fidelity Trust,* 74 Ga App 836, 41 SE2d 614 (1947); *Schwartz v. Schwartz,* 366 Ill 247, 8 NE2d 668, 112 ALR 325 (1937); *Wetmore v. Mellinger,* 64 Iowa 741, 18 NW 870 (1884); *Harter v. Lewis Stores, Inc.,* 240 SW2d 86 (Ky 1951); *North Point Const. Co. v. Sagner,* 185 Md 200, 44 A2d 441 (1945); *Potts v. Imlay,* 4 NJL 377 (1816); *Johnson v. Walker-Smith Co.,* 47 NM 310, 142 P2d 546 (1943); *Burt v. Smith,* 181 NY 1, 73 NE 495 (1905); *Pittsburg J.E. & E.R. Co. v. Wakefield Hardware Co.,* 138 NC 174, 50 SE 571 (1905); *The Cincinnati Daily Tribune Co. v. Bruck,* 61 Ohio St 489, 56 NE 198 (1900); *Mitchell v. Silver Lake Lodge,* 29 Or 294, 45 P 798 (1896); *Carnation Lumber Co. v. McKenney,* 224 Or 541, 356 P2d 932 (1960); *Norcross v. Otis Bros. & Co.,* 152 Pa 481, 25 A 575 (1893); *Ring v. Ring,* 102 RI 112, 228 A2d 582 (1967); *Smith v. Adams,* 27 Tex 28 (1863); *Petrich v. McDonald,* 44 Wash2d 211, 266 P2d 1047 (1954); *Myhre v. Hessey,* 242 Wis 638, 9 NW2d 106, 150 ALR 889 (1943).

[4] *Peerson v. Ashcraft Cotton Mills,* 201 Ala 348, 78 So 204 (1917); *Ackerman v. Kaufman,* 41 Az 110, 15 P2d 966 (1932); *Leek v. Brasfield,* 226 Ark 316, 290 S2d 632 (1956); *Eastin v. Bank of Stockton,* 66 Cal 123, 4 P 1106 (1884); *Slee v. Simpson,* 91 Colo 461, 15 P2d 1084, 85 ALR 412 (1932); *Calvo v. Bartolotta,* 112 Conn 396, 152 A 311 (1930); *Tatum Bros. Real Estate & Inv. Co. v. Watson,* 92 Fla 278, 109 So 623 (1926); *McCardle v. McGinley,* 86 Ind 538 (1882); *Carbondale Inv. Co. v. Burdick,* 67 Kan 329, 72 P 781 (1903); *Graffagnini v. Schnaider,* 164 La 1108, 115 So 287 (1927); *White v. Dingley,* 4 Mass 433 (1808); *Brand v. Hinchman,* 68 Mich 590, 36 NW 664 (1888); *O'Neill v. Johnson,* 53 Minn 439, 55 NW 601 (1893); *Harvill*

included in England, is not full compensation for an unfounded lawsuit, which is true; and that while honest litigants should be encouraged to seek justice, "surely there is no policy in favor of vexatious suits known to be groundless, which are a real and often a serious injury". Prosser, The Law of Torts 851, § 120 (4th ed, 1971). Adequate protection for bona fide litigants, according to this view, exists in "the heavy burden of proof upon the plaintiff, to establish both lack of probable cause and an improper purpose," *ibid.*

■ While the first proposition may be conceded, the second has seemed doubtful to other eminent authority. The question is not whether a plaintiff should sue only in good faith, but under what circumstances he must be prepared to defend his good faith in a countersuit. As Judge Edgerton put it in reaffirming the English rule for the District of Columbia, "[s]ome sort of balance has to be struck between the social interests in preventing unconscionable suits and in permitting honest assertion of supposed rights. These interests conflict because a suit which its author thinks honest may look unconscionable to a jury." *Soffos v. Eaton,* 152 F2d 682, 683 (1945). The "special interest" rule is not squarely addressed to misgivings whether that balance is adequately protected by the burden of proof and by the inferences allowed a jury in malicious prosecution cases, and we might not in the first instance adopt the rule for that reason. But this case is not the first instance, and the rule as we have stated it does make some contribution insofar as it holds a plaintiff to notice of circumstances or procedures that subject a defendant to immediate interference or extraordinary risk of harm.

v. *Tabor,* 240 Miss 750, 128 S2d 863 (1961); *Brady v. Ervin,* 48 Mo 533 (1871); *McCormick Harvesting Mach. Co. v. Willan,* 63 Neb 391, 88 NW 497 (1901); *Kolka v. Jones,* 6 ND 461, 71 NW 558 (1897); *Johnson v. Moser,* 181 Okla 75, 72 P2d 715 (1937); *Cisson v. Pickens Sav. & Loan Ass'n,* 258 S Car 37, 186 SE2d 822 (1972); *Teesdale v. Liebschwager,* 42 SD 323, 174 NW 620 (1919); *Lipscomb v. Shofner,* 96 Tenn 112, 33 SW 818 (1896); *Closson v. Staples,* 42 Vt 209 (1869); *Van Hunter v. Beckley Newspapers Corp.,* 129 W Va 302, 40 SE2d 332 (1946).

■ Nor do we accept the argument that the litigant's privilege against a libel action constitutionally compels a malicious prosecution action specifically for injury to reputation. Article I, section 10, Oregon Constitution, provides:

> No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.

This guarantee, common in state constitutions since 1776 and as old as chapter 40 of Magna Carta,[5] promises a remedy for injury to reputation as much as, but no more than, for injury to other personal and property interests that may be equally burdened by vexatious litigation; that is to say, it promises a remedy "by due course of law." But the rules defining litigants' privileges and malicious prosecution are old parts of the law. More important, these rules protect the freedom of litigants to pursue their remedies in court that is the central concern of section 10 as a whole. One party's remedy is another's hazard, and some allotment between them is inescapable, but it would be ironic to derive a looser test of malicious prosecution from a constitutional guarantee of access to the courts. What weight article I, section 10 adds to striking the balance falls rather on the other side of the scales.

This court is not unprepared to reconsider an old common law rule that may have been overtaken by important changes in the conditions that originally gave it birth, or in related areas of law, or by complications and inconsistencies that call for clarification.[6] The law of malicious prosecution is not immune; indeed, Chief Justice O'Connell proposed aban-

[5] See A. E. Howard, The Road from Runnymede, 210, 481-486.

[6] *See, e.g., Hungerford v. Portland Sanitarium,* 235 Or 412, 384 P2d 1009 (1963), abolishing charitable immunity from tort liability doctrine; *Ritter v. Beals,* 225 Or 504, 358 P2d 1080 (1961), combining defenses of contributory negligence and implied assumption of risk.

doning the "special injury" rule in 1975. *Buck v. Gale, supra,* 271 Or at 95 (O'Connell, CJ, dissenting). But readiness to take account of extrinsic changes or intrinsic flaws in common law premises is not equivalent to legislating from year to year. Such a view is sometimes urged, not only because courts were responsible for the original rule, but also on the ground that they are institutionally better equipped for the rational and systematic development of private law; for legislatures are said to give attention to this development only sporadically at the initiative of special interests, and individuals who may someday be claimants in civil litigation seldom recognize a shared interest in the law in advance of such litigation. See Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law,* 48 Minn L Rev 265 (1963) and sources there cited.[7] But the legislative process is not inappropriate, given adequate time and preparation, for studying and resolving the competing and the common interests at stake in private law, and this state's legislative assembly has in fact addressed itself in recent years to major issues of civil liability.[8] These include two recent examinations of medical malpractice actions, the same problem that we are invited to

[7]Professor Peck argued that courts are more familiar with the actual functions of legal rules in litigation, that they are less likely to adopt a proposed rule favoring one interest without consideration of its impact on related concerns, and that they have as much opportunity as legislatures to take account of known empirical materials. On the other hand, certain legislative techniques are not available to a court, for instance specifying minimum or maximum amounts of recovery. Nor does an appeal briefed by two parties on specific facts, despite occasional briefs *amicus curiae,* equal the public participation in legislative hearings and direct communications.

The fact that proposed reforms in private law can be better *prepared* by long-term commissions, academic groups, and possibly judges (*see* Cardozo, *A Ministry of Justice,* 35 Harv L Rev 113 (1921)) than in *ad hoc* legislative bills does not mean that the ultimate choice whether or not to *enact* the proposed readjustment of interests is not properly a legislative decision.

[8]*E.g.* Or Laws 1971, ch 668 (comparative negligence); Or Laws 1975, ch 599 (abolishing "last clear chance" and "implied assumption of risk"); Or Laws 1971, ch 473, Or Laws 1975, ch 796, Or Laws 1977, ch 269 (medical malpractice); Or Laws 1971, ch 523, Or Laws 1975, ch 784 (no-fault automobile insurance); Or Laws 1977, ch 843 (products liability actions); HB 2448, 1977 Regular Session Legislative Assembly (proposed repeal of guest passenger statute).

address by changing the common law action of malicious prosecution. *Cf.* Note, *Malicious Prosecution: An Effective Attack on Spurious Medical Malpractice Claims?,* 26 Case W Res L Rev 653 (1976). That this common law action would offer no remedy against baseless malpractice actions in the absence of "special injury" has been well known; the court reaffirmed the requirement as recently as 1969, 1971, 1975, and 1976 in the cases referred to above. No newly demonstrated flaw or major change in related law or in external conditions justifies our departure from these recent holdings now. The demurrer to the first count of appellants' complaint was correctly sustained.

### III

The second count of appellants' complaint presents a different problem. This count alleged that defendant attorneys were "negligent" in not ascertaining the facts of their erroneous malpractice action and in "maintaining and counseling said action of defendant Mathis against plaintiffs when they knew such action was not legal and just."

■ The negligence alleged here was toward plaintiffs themselves, not derivative from negligence toward the attorneys' client; and the possibility of an injured third party's action against a negligent attorney was left open in *Metzker v. Slocum,* 272 Or 313, 317, 537 P2d 74 (1975), when the court found the complaint in that case insufficient to support such an action. *Cf. also McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977). But when it takes a "special injury" to recover for the *malicious* pursuit of an unfounded civil action, it would be incongruous to base a recovery on mere carelessness without the same requirement. That is equally true of this count against the client, Mathis.

■ Appellants rely on the statutory duties imposed on attorneys by ORS 9.460 in order to protect members of the public in appellants' position. This statute enjoins attorneys to

> (3) Counsel or maintain such actions, suits, or pro-

ceedings or defenses only as may appear to him legal and just, except the defense of a person charged with a public offense;

and

    (7) Not encourage the commencement or continuance of an action, suit or proceeding from any motives of passion or interest; . . . .

It is true that the duties expressed in these provisions of the Oregon State Bar act run to members of the public beyond an attorney's clients. In the present case, the complaint did not in fact allege that defendants were motivated by the "passion or interest" proscribed by subsection (7), but the allegation quoted above does appear to invoke subsection (3). Taken by itself, it asserts a violation of that subsection by pursuit of an action *known* to be wrongful and unjust. If it stood alone, it would appear to go beyond negligence to allege a deliberate breach of a duty imposed by statute to protect members of the public against the precise kind of injury of which plaintiffs complain.

■ ■   Violations of duties of this kind often do give rise to private rights of action independent of the common law. In an analogous area, the Supreme Court of the United States recently decided that the duty to refrain from "manipulative or deceptive devices" imposed by the Securities Exchange Act of 1934, 15 USC § 78j(b), would support a civil liability of accountants who aided and abetted a broker to breach this duty by knowingly performing incomplete and ineffective audits, but not upon an allegation that they did so negligently. Ernst & Ernst v. Hochfelder, 425 US 185, 96 S Ct 1375, 47 L Ed 2d 668 (1976).[9] And of course,

---

[9]See the review of developments in this field in Besser, *Privity?—An Obsolete Approach to the Liability of Accountants to Third Parties,* 7 Seton Hall L Rev 507 (1976). The difference between the scope of liability for negligent and for conscious substandard professional performance is reviewed in Levitin, *Accountants' Scope of Liability for Defective Financial Reports, 15 Hast. L J 436 (1964). See also Note, Public Accountants and Attorneys: Negligence and the Third Party,* 47 Notre Dame Law. 588 (1971); Averill, *Attorney's Liability to Third Persons for Negligent Malpractice,* 2 Land and Water Law Review 379 (1967).

the professional duties imposed by ORS 9.460 bind attorneys independently of any "special injury" to anyone. However, in the present case the allegation of the attorneys' knowledge was pleaded expressly as a specification of negligence, not as an intentional and deliberate breach of a statutory duty to plaintiffs. As stated above, we reject a theory of liability for negligence toward persons wrongfully sued that would reach injuries not protected against malicious prosecution of civil proceedings. Accordingly, the demurrer was properly sustained.

Affirmed.