Sidney BRODY, M. D., Appellant,

v.

Marilyn RUBY et al., Appellees.

No. 60842.

Supreme Court of Iowa.

June 28, 1978.

Michael C. Vinyard, Ottumwa, for appellant.

D. M. Elderkin and David A. Elderkin, of Wadsworth, Elderkin, Pirnie & Von Lackum, Cedar Rapids, for appellees.

Considered by MOORE, C. J., and MASON,* REES, UHLENHOPP, and REYNOLDSON, JJ.

* Serving after June 14, 1978, by special assignment.

REYNOLDSON, Justice.

This is a suit by a physician, Dr. Sidney Brody, against the former plaintiff (Marilyn Ruby) and her lawyers in a prior action for malpractice against Dr. Brody and others. The malpractice action, arising out of the death of Mrs. Ruby's husband, was settled without direct participation of Dr. Brody. It then was dismissed with prejudice as to all defendants.

In several counts, this petition alleged defendants wrongfully instituted the malpractice litigation and consequently became liable in damages to plaintiff on theories of malicious prosecution, abuse of process, and negligence. Dr. Brody alleged $250,000 actual damages in cost and time in defense of the malpractice suit, and for injury to personal and professional reputation, business, credit, community standing, and for humiliation, embarrassment, mental suffering, anguish, physical pain and discomfort. He further prayed for $250,000 in exemplary damages.

After depositions and interrogatories, defendants moved for summary judgment. This motion was sustained as to all counts of the petition. Plaintiff timely appeals, relying on propositions treated in the following divisions. We affirm.

I. *Sufficiency of summary judgment procedure.*

Plaintiff challenges sufficiency of defendants' summary judgment on three grounds.

He argues rule 237(h), Rules of Civil Procedure, requires a party moving for summary judgment to submit supporting affidavits, and defendants failed to do so. R.C.P. 237(h) provides:

Upon any motion for summary judgment pursuant to rule 237, there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried, including specific reference to those parts of the pleadings, depositions, answers to interrogatories, admissions on

file and affidavits which support such contentions and a memorandum of authorities.

Subparagraph "h" was added to R.C.P. 237 by Acts 1975 (66 G.A.) ch. 260. The change in this summary judgment rule left intact subparagraph "b":

A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, *move with or without supporting affidavits* for a summary judgment in his favor as to all or any part thereof. (emphasis supplied)

■ We hold subparagraph "h" by implication does not repeal the plain language of subparagraph "b" which allows the motion to be made "with or without supporting affidavits." The 1975 provisions for a statement of material facts and memorandum of authorities was designed in part to assist trial court in examining the entire record before it, including affidavits, if any, in light of allegations in the motion. See *Meyer v. Nottger*, 241 N.W.2d 911, 917 (Iowa 1976); *Schulte v. Mauer*, 219 N.W.2d 496, 500 (Iowa 1974).

In so ruling, we emphasize it remains movant's burden to show there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. R.C.P. 237(c); *Mead v. Lane*, 203 N.W.2d 305, 306–307 (Iowa 1972).

Plaintiff further argues defendants' motion was fatally defective because it lacked a specific allegation that no issue of material fact existed.

■ We are not persuaded such omission is fatal. The very essence of summary judgment is the notion no material factual issues exist. The basic issue concerns legal consequences flowing from undisputed facts. *Jacobs v. Stover*, 243 N.W.2d 642, 643 (Iowa 1976).

■ Because our rule 237 is patterned on rule 56, Federal Rules of Civil Procedure, federal interpretations are persuasive. *Sherwood v. Nissen*, 179 N.W.2d 336, 339 (Iowa 1970). Federal courts liberally interpret summary judgment motions to secure

just, speedy, and inexpensive determination of every action. See 10 Wright & Miller, Federal Practice and Procedure: Civil, § 2713, at 393 (1973). This court has demonstrated a similar flexibility. See *Hanna v. State Liquor Control Commission*, 179 N.W.2d 374, 375 (Iowa 1970).

Finally, plaintiff contends defendants did not meet the burden of proof necessary to sustain a motion for summary judgment.

■ In ruling on such motion, a court must view all material before it in light most favorable to the non-moving party. *Sand Seed Service, Inc. v. Poeckes*, 249 N.W.2d 663, 664 (Iowa 1977); *Daboll v. Hoden*, 222 N.W.2d 727, 731 (Iowa 1974). If reasonable minds could draw different inferences and reach different conclusions from undisputed facts, the issues must be reserved for trial and summary judgment is improper. *Daboll v. Hoden*, supra, 222 N.W.2d at 733.

As more fully set out in subsequent divisions, we hold defendants in this instance met the burden of proof necessary to sustain their motion. The material before the court demonstrated no material fact issues warranting a trial. The vital issues are legal, not factual.

## II. *Malicious prosecution.*

We have noted one ground of plaintiff's action is based on malicious prosecution arising out of the prior malpractice litigation.

The six elements of a malicious prosecution action are laid out in *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976). The sixth element, "damage to plaintiff," is subject to further qualification. Only certain damage satisfies this element.

■ In this jurisdiction the rule always has been no cause of action arises from malicious prosecution unless there has been either an arrest, seizure of property, or a special injury sustained which would not necessarily result in all suits prosecuted to recover for like causes of action. *Bickel v. Mackie et al.*, 447 F.Supp. 1376, 1379 (N.D.

Iowa 1978); *Aalfs v. Aalfs,* 246 Iowa 158, 163, 66 N.W.2d 121, 124 (1954); *Wetmore v. Mellinger,* 64 Iowa 741, 744, 18 N.W. 870, 871 (1884).

Imposition of the "special injury" requirement was a public policy determination resolved in favor of allowing litigants access to courts to resolve controversies without fear of a counteraction for damages based on alleged malice in event of an adverse decision:

> The * * * position * * * which we have adopted and still believe sound, is that the courts should be open to all who think they have a just cause of action, and it would deter many honest litigants from asserting their rights if they knew they were to be penalized by a counter-action for damages based on alleged malice if for any reason they failed in winning their cause.—*Aalfs,* supra, 246 Iowa at 161, 66 N.W.2d at 123.

The rationale behind the special injury rule is articulated further in *Ammerman v. Newman,* 384 A.2d 637, 641 (D.C.App.1978), the court quoting the following from *Melvin v. Pence,* 76 U.S.App.D.C. 154, 157, 130 F.2d 423, 426 (1942):

> The [special injury] limitation is sound. When disputes reach the litigious stage, usually some malice is present on both sides. Friendly tort suits are not common. Nor is existence or want of probable cause always easy to determine until the event of the litigation is known. Some margin of safety in asserting rights, though they turn out to be groundless and their assertion accompanied by some degree of ill-will, must be maintained. Otherwise litigation would lead, not to an end of disputing, but to its beginning, and rights violated would go unredressed for fear of the danger of asserting them.

See also *Fielder Agency v. Eldan Const. Corp.,* 152 N.J.Super. 344, 349, 377 A.2d 1220, 1223 (1977).

Seventeen jurisdictions, including Iowa, follow the above English or "strict" rule. Twenty-three jurisdictions do not impose the special injury requirement. Other states have not decided the issue. See cases collected, *O'Toole v. Franklin,* 279 Or. 513, 518–519, 569 P.2d 561, 564 nn. 3 & 4 (1977); see also Note, *Malicious Prosecution: An Effective Attack on Spurious Medical Malpractice Claims?,* 26 Case W.R.L.Rev. 653, 657–662 (1976).

■ Examination of plaintiff's deposition discloses no viable evidence of damage other than his assertions of mental distress resulting from the malpractice action. He is unable to demonstrate any loss of practice or diminished income. He does not present a claim of "special injury" to professional reputation that would not accompany most professional malpractice actions.

We weighed the various considerations in *Aalfs* and refused to overthrow our rule. We find no persuasive reason in this case to abolish our special injury requirement.

We hold trial court was right in granting summary judgment for defendants on the malicious prosecution count.

III. *Abuse of process.*

Plaintiff's petition also alleges the malpractice action constituted abuse of process.

In its broadest sense abuse of process has been defined as misuse or perversion of regularly issued legal process, after it has been issued, to achieve some collateral purpose not justified by the nature of the process. See *Hyde Construction Co., Inc. v. Koehring Company,* 387 F.Supp. 702, 712–713 (S.D.Miss.1974); *Sarvold v. Dodson,* supra, 237 N.W.2d at 449; Restatement (Second) of Torts § 682 (1977); Birnbaum, *Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions,* 45 Fordham L.Rev. 1003, 1033–1034 (1977).

■ In the interest of protecting ready access to courts, abuse of process actions should not lie for mere institution of a civil action which inconveniences a defendant. *Drago v. Buonagurio,* 89 Misc.2d 171, 172–173, 391 N.Y.S.2d 61, 62 (1977). Settlement of actions is a positive goal of courts in order to avoid unnecessary and lengthy litigation. See *Bickel v. Mackie et al.,* supra,

447 F.Supp. at 1382; Birnbaum, *Physicians Counterattack*, supra, 45 Fordham L.Rev. at 1041. Thus even a lawsuit commenced with expectation of settlement could not be classified as an abuse of process.

■ Plaintiff does not affirmatively allege improper use of original notice or other process in instituting the malpractice action. There is no assertion the original notice was misused after it was issued. It follows his complaint on this count was substantively deficient. See *Holiday Magic, Inc. v. Scott*, 4 Ill.App.3d 962, 969, 282 N.E.2d 452, 457 (1972).

Defendants' motion for summary judgment on this count was properly sustained.

### IV. *Negligence.*

Finally, plaintiff's petition in a separate count alleged defendant lawyers were liable to him for negligently failing to investigate the facts and circumstances surrounding the medical malpractice claim before filing suit. Specifically, plaintiff Brody alleged these lawyers owed him a duty to comply with DR 6–101(A)(2), Code of Professional Responsibility for Lawyers ("A lawyer shall not handle a legal matter without preparation adequate in the circumstances.") and DR 7–102(A)(1) ("In his representation of a client, a lawyer shall not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.").

■ Absent special circumstances, it generally is held an attorney can be liable for consequences of professional negligence only to a client. *McDonald v. Stewart*, 289 Minn. 35, 40, 182 N.W.2d 437, 440 (1970); Annot., *Attorneys—Liability to Third Parties*, 45 A.L.R.3d 1181, 1184, 1187 (1972); Note, *Malicious Prosecution*, supra, 26 Case W.R.L.Rev. at 671. The courts reason that if liability would be permitted to a third party without regard to privity, the parties to the contract would be deprived of control of their own agreement. Further, the duty to the general public resulting from aban-

donment of the privity requirement would place a potentially unlimited burden on lawyers. *Id.*

■ Following assaults on privity protection in other tort areas, it was inevitable some inroads would be made in the area of legal malpractice. California held an attorney who negligently drafted a provision of his client's will so as to render it void would be liable to the intended beneficiaries. *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), cert. denied, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1972); see *Roberts v. Ball et al.*, 57 Cal.App.3d 104, 128 Cal.Rptr. 901 (1976) (letter prepared for submission to third party describing a particular organization as a general partnership, knowing the document was to be used in an attempt to borrow money); *Heyer v. Flaig*, 70 Cal.2d 223, 449 P.2d 161, 74 Cal. Rptr. 225 (1969). It is clear, however, that the third party, in order to proceed successfully in a legal malpractice action, must be a direct and intended beneficiary of the lawyer's services. Cf. *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969) (holding accountants liable to party whom they knew intended to rely upon accounting statement, for negligent failure to determine amount of accounts in manner agreed upon).

Where this special relationship between the lawyer and the third party is lacking, courts refuse to impose liability based on legal malpractice. On this point the following from *Norton v. Hines*, 49 Cal.App.3d 917, 923, 123 Cal.Rptr. 237, 240–241 (1975), is relevant:

> In the case at bar a former litigant is suing adverse counsel. Clearly, an adverse party is not an intended beneficiary * * *.

> *  *  *  *  *  *

> The attorney owes a duty to his client to present his case vigorously in a manner as favorable to the client as the rules of law and professional ethics will permit. He is an advocate and an officer of the court. He is cognizant of the public policy that encourages his clients to solve their problems in a court of law. In our opinion, when representing his client in

the initiation of a lawsuit, he should not be judged by a different standard. This is exactly the concept urged by Norton. His complaint verifies his belief that his only cause of action against Lind is for malicious prosecution (the first cause of action). Against attorneys, however, he proceeds on a cause of action for simple negligence which requires a different and less demanding standard of proof. We believe the public policy of favoring free access to our courts is still viable. However, if Norton's cause of action against attorneys for negligence is permitted, this policy will be subverted. The attorney must have the same freedom in initiating his client's suit as the client. If he does not, lawsuits now justifiably commenced will be refused by attorneys, and the client, in most cases, will be denied his day in court.

These public policy considerations were examined in *Lyddon v. Shaw*, 56 Ill.App.3d 815, 822, 14 Ill.Dec. 489, 494, 372 N.E.2d 685, 690 (1978):

> This same public interest demands that we reject any effort to extend the tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process. These considerations apply with equal force, not only to a party litigant, but to his counsel, (citation), since a litigant's free access to the courts would frequently be of little value to him if he were denied counsel of his choice by a rule which rendered attorneys fearful of being held liable as insurers of the merits of their client's case, and therefore unwilling to undertake representation in close or difficult matters. The very purpose of a court of law is to determine whether an action filed by a party has merit and we refuse to recognize a rule which would render a litigant and his attorney liable in tort for negligently \* \* \* failing to determine in advance that which, ultimately, only the courts could determine.

See also *Spencer v. Burglass*, 337 So.2d 596, 600–601 (La.App.1976); *Gasis v. Schwartz*, 80 Mich.App. 600, 264 N.W.2d 76 (1978); *Drago v. Buonagurio*, supra, 89 Misc. at

172–173, 391 N.Y.S.2d at 62–63; *O'Toole v. Franklin*, supra, 279 Or. at 523–524, 569 P.2d at 566–567.

Nor are we persuaded provisions of the Code of Professional Responsibility for Lawyers create grounds for imposing liability to a third party for negligence. The preliminary statement provides:

> The Code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, *nor does it undertake to define standards for civil liability of lawyers for professional conduct.* (emphasis supplied)—40 I.C.A. at 469.

The Code of Professional Responsibility for Lawyers addresses the various concerns which confront a lawyer in his or her relationship with a client, the justice system, and the public in general. We addressed the inevitable tensions in *Matter of Frerichs*, 238 N.W.2d 764, 768–769 (Iowa 1976). The lawyer's advocate role is unlike that of other professionals. He or she is a quasi-judicial officer of the court, *Hoppe v. Klapperich*, 224 Minn. 224, 241, 28 N.W.2d 780, 791 (1947); 7 Am.Jur.2d, Attorneys at Law, § 3, at 45 (1963), with a grave and heavy responsibility in the administration of justice. See *Committee on Professional Ethics v. Bromwell*, 221 N.W.2d 777, 779 (Iowa 1974). The lawyer's obligation to represent his or her client zealously within the bounds of the law, see EC 7–1, coupled with the basic adversary nature of the legal profession, see Birnbaum, *Physicians Counterattack*, supra, 45 Fordham L.Rev. at 1074, must be accompanied by immunity from liability for negligence in an action by a successful adverse litigant.

■ We hold the Iowa Code of Professional Responsibility for Lawyers furnishes no basis for a private cause of action for negligence in the circumstances of this case. Our determination is supported by decisions from every court which has considered the same or a similar issue. See *Bickel v. Mackie et al.*, supra, 447 F.Supp. at 1383; *Merritt Chapman & Scott Corp. v. Elgin*

*Coal, Inc.*, 358 F.Supp. 17, 22 (E.D.Tenn. 1972); *O'Toole v. Franklin,* supra, 279 Or. at 523–524, 569 P.2d at 566–567; *Spencer v. Burglass,* supra, 337 So.2d at 600–601.

This is not to say a party who is put to the defense of a groundless lawsuit may not, in an appropriate case, institute disciplinary proceedings against the offending lawyer. See our court rule 118.2 and *Lyddon v. Shaw,* supra, 56 Ill.App.3d at 823, 14 Ill.Dec. at 495, 372 N.E.2d at 691.

Trial court was right in granting summary judgment for the lawyers on plaintiff's negligence claim.

AFFIRMED.