Argued October 5, 1981, reargued September 7, affirmed as modified and remanded December 21, 1982

## OKSENHOLT,
*Respondent on Review,*
*v.*
## LEDERLE LABORATORIES,
*Petitioner on Review.*

### (NO. A7808-13974, CA 16160, SC 27778)

656 P2d 393

E. Richard Bodyfelt, Portland, argued the cause for petitioner on review. With him on the petition were Roger K. Stroup and Bodyfelt, Mount & Stroup, Portland. With

him on the brief in the Court of Appeals were Peter R. Chamberlain and Bodyfelt, Mount & Stroup, Portland.

Richard P. Noble, Portland, argued the cause and filed briefs for respondent on review.

LENT, C. J.

**LENT, C. J.**

The following issue is presented: Can a physician maintain an action for misrepresentation and negligence against a prescription drug manufacturer that misrepresents information about its drug to the doctor? If so, what damages are legally cognizable? We hold that a physician can maintain such an action and may recover certain foreseeable damages that are the result of the misconduct alleged.

Plaintiff's amended complaint asserted that he was entitled to recover damages in negligence and in fraud. Defendant moved to strike the amended complaint on the ground that "the losses claimed by plaintiff are not legally recoverable under Oregon law." The trial court, "finding that the damages claimed by plaintiff are not recoverable under Oregon law," allowed the motion without leave to plead over and entered judgment for defendant for costs. The motion was filed, heard and decided prior to the effective date of the Oregon Rules of Civil Procedure. The motion was apparently based upon former ORS 16.100 although, in substance, it raised a contention that plaintiff had failed to state facts sufficient to constitute a cause of action. That claim should have been asserted by demurrer, former ORS 16.260(6). We shall treat it as though the motion to strike were a demurrer;[1] therefore, all well-pleaded facts alleged in the amended complaint are to be taken as true for purpose of resolution of the legal issue presented by the motion. *See,* for example, *Reliable Credit Assn. v. Credithrift of Amer.,* 280 Or 233, 570 P2d 379 (1977).

Plaintiff relied on information provided by defendant in prescribing defendant's drug, Myambutol, to his patient, Benton. Defendant failed to warn plaintiff of the risk of permanent loss of vision associated with the drug, although defendant knew, or should have known, the hazards and contraindications for use of the drug. Alternatively, plaintiff alleges that defendant deliberately withheld from plaintiff information about the drug's side effects and misled him as to the reversability of impairment

---

[1] *See Harris v. Northwest Natural Gas Company,* 284 Or 571, 573, 588 P2d 18 (1978).

of vision resulting from use of the drug. The drug blinded Benton and she sued plaintiff and defendant. Subsequently, Benton settled with plaintiff for $100,000. Plaintiff here seeks to recover the $100,000 paid in settlement and damages for his loss of business and harm to his reputation.

■ Defendant, focusing on plaintiff's claim for settlement costs, characterizes plaintiff's action as either one or both of malicious prosecution and a request for indemnity. Pursuing the first characterization, defendant argues that *O'Toole v. Franklin,* 279 Or 513, 569 P2d 561 (1977), bars recovery on a claim of malicious prosecution. *O'Toole* would bar plaintiff from suing the patient, Benton, or Benton's attorney even if Benton's action was totally without probable cause. Defendant argues that the logic behind our decision in *O'Toole* should bar this action as well. Further, defendant argues that plaintiff has not alleged facts sufficient to state a claim for relief under an indemnity or contribution theory. *See* ORCP 21A.8.

The trial court adopted defendant's characterization of the theory of plaintiff's case and dismissed plaintiff's action without the right to plead over. The Court of Appeals reversed, adopting plaintiff's characterization of the case and holding that damages are to be determined in light of the tort alleged, not the reverse. We agree with the approach taken by the Court of Appeals, but not completely with the result.

First, we find defendant's attempt to analyze this case as one of malicious prosecution to be without merit. As the Court of Appeals held, *O'Toole v. Franklin, supra,* is irrelevant to the case at bar. That case limited actions only against the parties who brought the original civil action. We see no reason to extend its holding here. Further, as discussed *infra,* the existence of Benton's suit against plaintiff is not necessary for plaintiff to state a cause of action against defendant. The patient's action against plaintiff does bear on the question of foreseeable legally cognizable damages, but it is an action by a third party. Plaintiff's action against defendant has no direct connection to the first action beyond the damages issue.

Defendant's arguments involving indemnity and contribution suffer from the same defect. Defendant has

focused on the damages claimed, rather than the tort alleged. There may be some overlap between damages claimable under indemnity or contribution and under a theory of negligence, but this overlap does not bar either cause of action. Plaintiff seeks monetary damages of three types, only one of which would be recoverable in indemnity. We now examine plaintiff's claims in light of the facts pleaded to support his theories of the case.

## NEGLIGENCE

In this case, plaintiff alleges that defendant was negligent, that defendant's negligence caused specified injuries to plaintiff's professional reputation and, consequently, to his earning capacity, and that it caused him to be exposed to a claim for damages for his patient's loss of vision which he settled for $100,000. These allegations, if supported by evidence, would be sufficient to present a question for the trier of fact upon a part of the alleged damages.

Defendant characterizes the case as one where a physical injury to a third party causes the plaintiff economic loss. In other words, defendant argues, the patient's ingestion of the drug caused economic injury to the doctor.

■ We characterize the case differently: The manufacturer improperly informed the doctor about the effects of the drug; the doctor relied on this misinformation and prescribed the drug to his patient; the doctor suffered what he characterizes as "economic" harm as a result of relying on the lack of accurate information.[2] The fact that the patient sued plaintiff was not an element of a cause of action in plaintiff's favor against this defendant. Even if the patient had not taken the medicine and gone blind, knowledge of the physician's misprescription among patients and other physicians could harm his reputation and cause economic loss. Where breach of an obligation owed by a defendant causes plaintiff economic loss, a cause

---

[2] As will be seen, we hold that damages for injury to plaintiff's reputation are legally cognizable. Plaintiff seems to concede that such injury is "economic"; therefore, we shall assume that to be so for the purpose of this opinion. This case presents nothing that requires us to determine whether injury to reputation differs from injury to person or property as those terms appear in Oregon Constitution, Article I, Section 10.

of action exists. *State ex rel Western Seed v. Campbell,* 250 Or 262, 442 P2d 215 (1968); *see also Berg v. General Motors Corp.,* 87 Wash 2d 584, 555 P2d 818 (1976).

■ We now examine whether defendant owed plaintiff any obligation to warn of the drug's side effects and the ramifications of any breach of that obligation. The parties do not disagree that, as a prescription drug manufacturer, defendant had an obligation to warn physicians, including plaintiff, of possible harmful effects of its prescription medicines. *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 528 P2d 522 (1974); 21 CFR § 200.5, § 201.56, § 201.57 (1982). The manufacturer is directly liable to the patient for any breach of this duty to the physician. *McEwen, supra,* 270 Or at 386-87. Defendant argues that this liability to the patient is exclusive, that because the drug manufacturer is directly liable to the patient, no liability to the doctor arises from a breach of the duty to warn. Defendant cites *McEwen* in support. Plaintiff cites *McEwen* as well, but in support of the view that the manufacturer's duty to warn creates a cause of action in the doctor for failure to warn. *McEwen* did not address this issue. That case held only that a drug manufacturer must warn the doctor and that a patient may sue if the manufacturer does not warn properly.

Thus, we adjudicate this question for the first time and we do so with very little guidance from other courts. Plaintiff cites an unreported lower court opinion from California where the plaintiff in that case also claimed physical injury (emotional distress) as well as the kind of damages sought here. Defendant's case, *Bristol-Myers Co. v. Gonzales,* 548 SW2d 416 (Tex Civ App 1977), is also distinguishable. That case merely held that a physician could not rely on strict products liability, the benefit of which Texas law limited to consumers and, therefore, would not sanction that theory of liability for recovery in indemnity.

Our case is different. First, plaintiff asserts his own innocence and seeks direct recovery, not indemnity. Second, he alleges negligence on the part of the manufacturer. The limitations imposed by the Texas court on strict liability for that defective product do not apply.

■ The Court of Appeals, in upholding plaintiff's cause of action, analyzed the problem solely in terms of foreseeability. In this approach, the Court of Appeals erred. We have held previously that violation of a safety regulation negates questions of foreseeability. For example, if a logging company fails to place a flagman at the road where timber is cut, in violation of a safety regulation promulgated pursuant to ORS 654.035, and this results in injury to a motorist hit by a falling tree, the question of foreseeability becomes irrelevant. Breach of the statutory obligation constitutes negligence *per se. See Downey v. Traveler's Inn*, 243 Or 206, 412 P2d 359 (1966); *Snyder v. Prairie Logging Co., Inc.*, 207 Or 572, 298 P2d 180 (1956).

■ *McEwen, supra,* and 21 CFR § 200 *et seq* prescribe obligations of care that drug manufacturers owe physicians. These regulations relating to warnings and contraindications serve purposes similar to the safety regulations adjudicated in *Downey* and *Snyder.* Therefore, we examine the scope and intent of the obligations created in the CFR sections.

First, are physicians within the class intended to be protected by the regulation; second, does the regulation provide an exclusive or an adequate civil remedy; and third, will a civil remedy for a physician as well as for an injured patient further the purpose of the regulation?

In its final rule in Docket Number 75N-0066, the Food and Drug Administration adopted these requirements in order "* * * to provide physicians, in straightforward and concise terms, with the information they need to prescribe a drug under conditions that maximize the drug's effectiveness and minimize its risks." 44 Fed Reg 37436 (1979). The warnings required by the regulations are specifically "directed to health care professionals and not to the ultimate consumer of the drugs." Id at 37438-37439. While the consumer is the ultimate beneficiary of the regulations, they were designed for the physician and not the patient. In fact, the FDA examined drug labeling for patients in a different proceeding. *See* 40 Fed Reg 57705 (1975).

It is important to understand the relationships among the prescription drug manufacturer, the health care professional and the patient. By law, a prescription drug

manufacturer cannot sell its products to the consumer without the physician's approval. The patient must rely on the physician to sift through the relevant literature, to match a medicine's indications and contraindications with the patient's ailment and to prescribe the appropriate drug. The regulations presume this three-way relationship and were designed to aid the physician. We hold that physicians are in the class protected by the regulations.

It is equally clear that the regulation asserts no exclusive method of enforcement. A party, commenting to the FDA on its proposed rules, criticized the proposed regulations, arguing that they acted to insulate a manufacturer from liability. The agency responded:

> "It is not the intent of FDA to influence the civil tort liability of the manufacturer or of the physician. Rather, it is the agency's intent to ensure that a complete and accurate explanation of the drug is provided to the medical community."

44 Fed Reg 37437 (1979). Absent congressional authorization, the FDA could not, of course, create civil liability. The imposition of liability for the breach of the protective obligation to warn doctors exists under state, not federal law. Affording such a remedy for injury to a physician that results from a prescription drug manufacturer's failure to supply adequate information will encourage drug manufacturers to supply that information and thus further the regulatory objective.

We now examine which types of plaintiff's pleaded damages may be recoverable. Plaintiff has asked for general damages of $150,000 and special damages of lost income up to the date of trial.[3] If proved, both impairment of earning capacity and lost income are legally cognizable damages that may have stemmed from the torts alleged.

---

[3] Specifically, plaintiff alleged:

"As a proximate result of defendant's breach of its duty to plaintiff, and due solely to that breach, plaintiff was exposed to a claim for damages for Mabel Benton's loss of vision, incurred the loss of $100,000 in settlement of Mabel Benton's disputed claim, his professional competency was questioned, and he suffered damage to his professional reputation in the community in which he practices, and consequent impairment of earning capacity, all to his general damage in the amount of $150,000, and plaintiff has lost income to the date of the trial in the amount of $____ special damages."

In examining the specifics of plaintiff's general damages request, we find a problem. Several factors comprise the $150,000 claim: loss of earning capacity that resulted from questioning of his competence, subjection to a law suit,[4] and injury to his reputation and the loss of $100,000 incurred in settlement of Benton's disputed claim. It is foreseeable that subjection to an action,[5] questioning of competence and harm to reputation would result from defendant's alleged breach and result in lost earning capacity and lost income.

The $100,000 settlement requires closer scrutiny. With respect to the $100,000, we disagree with the Court of Appeals' analysis. Plaintiff claims he is innocent of any wrongdoing, yet he asks for reimbursement of $100,000 paid to settle his part of a negligence suit filed against himself and defendant, Lederle. The Court of Appeals held that plaintiff could recover the settlement costs, "if reasonable."

The request for the $100,000 can be characterized in two fashions: first, as a request for indemnity or contribution, and second, as a factor in determining harm to reputation. Recovery of the settlement costs, if treated as a request for indemnity, would be precluded by our decision in *Ore-Ida Foods v. Indian Head,* 290 Or 909, 627 P2d 469 (1981), which bars recovery for economic loss that results from physical harm to a third person. The $100,000 may be

---

[4] Since counsel for plaintiff specifically stated in oral argument in this court that plaintiff was not asking for attorney fees, we do not rule on the question of whether attorney fees are recoverable in a tort of this kind. Rather, in light of counsel's statements, we view this fact that plaintiff was subjected to a malpractice action as one that contributes to questioning of his competency and may add further harm to his reputation.

[5] Defendant argues that *Kamyr, Inc. v. Boise Cascade Corp.,* 268 Or 130, 519 P2d 1031 (1974), should control on this point. In *Kamyr* we held that before legal causation could exist, it would have to be reasonably foreseeable that the injured party would sue a completely innocent person who had no connection to that third party's injuries. *Id* at 137. The plaintiff in *Kamyr* did not allege that the suit was reasonably foreseeable. In this case, plaintiff has sufficiently alleged that fact. Furthermore, a jury could find that a suit against an innocent physician in this situation is foreseeable. The patient places his care in the doctor's trust. This physician, who has knowledge of the patient's problems, must sift through the medical literature to find the right medicine for the patient. It is foreseeable that if the physician is given misinformation about a drug and the physician relies on that misinformation, thus harming the patient, the patient will sue the physician, even if he is completely innocent.

relevant, however, as a factor in determining harm to reputation. It is possible, though unlikely, that a rational jury may find that a completely innocent party settled a suit in order to avoid further harm to his reputation. That fact, however, does not make the request for payment of the $100,000 settlement cost proper in a damages pleading. We hold here that $100,000 of the $150,000 was improperly claimed as general damages. We defer the question of the settlement's admissibility as evidence to show damage to reputation to the trial court for an initial determination.

## FRAUDULENT MISREPRESENTATION.

■ In addition to his allegations of negligence, plaintiff alleges fraudulent misrepresentation by defendant. Misrepresentation requires a false representation[6] made with either knowledge of its falsity, or awareness of lack of knowledge as to its truth or falsity. *Meader v. Francis Ford, Inc.,* 286 Or 451, 456, 595 P2d 480 (1979). Plaintiff alleges that defendant represented:

"1. That any loss of vision was apparently reversible upon withdrawal of the medication;

"2. That 'in controlled studies, the frequency and magnitude of decreases of visual accuity [sic] among patients being treated wth Ethambutol Hydrochloride were not higher than patients on regimens not containing Ethambutol Hydrochloride,' when the defendant knew or in the exercise of reasonable care should have known that the referenced controlled studies were not comparable to the dose or duration of therapy recommended by the defendants;

"3. That the physician should look for a cause other than Myambutol to explain the patient's loss of vision and to discontinue Myambutol only if no other cause of visual loss could be found;

"when the defendant knew these representations were not accurate. Further, defendant failed to disclose its knowledge that the drug Myambutol could cause optic atrophy and hence permanent loss of vision."

Plaintiff also must have alleged that defendant made these representations for the purpose of misleading

---

[6] Where a duty to disclose exists, nondisclosure will support a theory of fraud, as well. *Millikin v. Green,* 283 Or 283, 583 P2d 548 (1978).

the other party, with the knowledge that defendant is misleading the other party or in reckless disregard of the fact that defendant is misleading the other party. *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 547-48, 487 P2d 870 (1971). Here, plaintiff alleged that defendant published the information about the drug for the purpose of advising physicians like the plaintiff that the representations made by defendant were made with the intent that physicians, including plaintiff, rely on them, that plaintiff did rely on them and was harmed as a result.

 Damages properly recoverable in an action for intentional misrepresentation are those which are a direct and necessary result of defendant's acts or omissions. *Cluck et ux v. Fish et al,* 230 Or 63, 368 P2d 626 (1962). Losses suffered through injury to reputation, lost business and impairment capacity are such that could flow naturally from an intentional misrepresentation. As a general matter, plaintiff may recover damages to his reputation due to another's intentional tort. *Wampler v. Palmerton,* 250 Or 65, 439 P2d 601 (1968). Similarly, loss of profits (or, as here, income) due to fraud has been held to be recoverable. *Bullock v. Hass,* 280 Or 501, 571 P2d 902 (1977); *cf. Cluck et ux v. Fish et al, supra.* Loss of future profits are also recoverable. *Meader v. Francis Ford, Inc., supra.* We hold, however, as we held in our discussion of damages in negligence, that plaintiff may not recover for the cost of the settlement because that would essentially be a recovery in indemnity.

## PUNITIVE DAMAGES.

 We uphold the Court of Appeals' decision with respect to punitive damages. Plaintiff alleges that defendant's breach of duty and misrepresentations were made in deliberate disregard of the rights and welfare of others. If plaintiff establishes these allegations at trial, punitive damages are appropriate. *See Starkweather v. Shaffer,* 262 Or 198, 497 P2d 358 (1972).

Affirmed as modified and remanded for trial.