OPINION OF THE COURT
John Leone, J.
This is an action to recover damages founded upon allegations of negligence, fraud, fraudulent misrepresentations, and violation of statute.
Plaintiff is a physician. His practice is devoted either exclusively or primarily to plastic, reconstructive and cosmetic surgery. As part of his practice, plaintiff prescribes and inserts mammary implant devices in his patients.
Defendants Bristol-Myers Squibb Company, Inc., Surgitek, Inc., and Medical Engineering Corporation manufactured and/or distributed the breast implants which were furnished to plaintiff. Defendant Dow Corning Corporation supplies the raw material, i.e., the silicon gel utilized in the breast implants.
Plaintiff alleges that he is board certified by the American Society of Plastic and Reconstructive Surgeons. He purchased *720 the cosmetic breast implant devices from defendants, who represented these devices as safe via labelling, advertising, promotional materials, mail, and oral statements, between 1978 and 1991. In January 1992, silicone breast implants were banned from use by the Federal Food and Drug Administration (FDA).
Plaintiff claims to have utilized defendants’ breast implants in approximately 1,800 patients between 1978 and 1992. A number of those patients sued plaintiff in malpractice due to various problems with the implants he inserted, including breakage, rupturing, and their sequela. A number of patients also sued defendants directly without naming Dr. Vitolo.
Plaintiff asserts that as a result of this and other litigation concerning silicone breast implants, and the negative publicity it has engendered, he has suffered damage to his professional practice and to his professional reputation. He further says that documentation reveals that defendants failed to disclose known problems with the implants, distributed them to physicians without proper testing, failed to advise physicians such as plaintiff concerning known risks of their use, suppressed data tending to show adverse effects upon rupture of the implant, and instructed their representatives to advise physicians to ignore FDA warnings and to ignore the consequences of leakage. Had he known of these defects, he would have either used another product or abandoned this aspect of his practice.
As damages, plaintiff seeks recovery for the loss of breast implant patients who might have otherwise been candidates therefor, damage to his reputation and loss of patients due to the negative publicity and negative public perception of breast implant procedures, loss of income, economic harm to the growth of his practice, and loss of income due to his required participation in trials, depositions, etc., and other out-of-pocket costs. ,
Defendants now move for an order dismissing this action pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.
In support of the motion, movants argue that this is a "classic” tort claim for "reputational damages” and cites Morrison v National Broadcasting Co. (19 NY2d 453) in support of the proposition that a tort claim for economic loss due to injury to reputation sounds only in defamation, even when the alleged injury results from conduct. In Morrison, plaintiff was a university professor who appeared on television quiz shows. He *721 alleged that the shows were rigged and that other contestants were-supplied with the answers to the questions. These arrangements were the subject of Grand Jury and congressional investigations. The plaintiff in Morrison sought recovery for the loss of two fellowships he would have received but for the scandal.
Movants also argue that the law does not recognize a duty on the part of defendants such as these to protect physicians from the risk of bad publicity or damage to reputation resulting from loss of patients, citing, inter alia, Palsgraf v Long Is. R. R. Co. (248 NY 339, 345).
Morrison v National Broadcasting Co. (supra) is readily distinguishable. In Morrison, the plaintiff never alleged negligence; he asserted, as a basis of recovery, the rather broad tort of intentional infliction of economic injury, a theory that the Court of Appeals refused to recognize. At bar, Dr. Vitolo asserts three causes of action, all of which are recognized at common law: negligence, fraud, and fraudulent misrepresentations. The fourth cause of action, violation of New York General Business Law § 349 (protection from deceptive acts and practices), will also be discussed herein.
Because this is not a defamation action, defendant Dow Coming’s alternative argument that this action is barred by the one-year Statute of Limitations applicable to such actions must also fail.
More importantly, actions of this specific nature have been reported and recognized in other jurisdictions. In Oksenholt v Lederle Labs. (294 Ore 213, 656 P2d 293), it was held by the Supreme Court of Oregon that a physician could maintain an action in negligence and fraud against a prescription drug manufacturer that misrepresented its product to the physician, and further, that the physician could recover certain foreseeable damages as a result of any misconduct. Plaintiff therein alleged, in a manner nearly identical to the plaintiff at bar, that he relied on information provided by defendant in prescribing its product Myambutol, that defendant knew or should have known about the hazards of the drug and/or deliberately withheld information about its side effects. This drug caused blindness in one of plaintiff’s patients, who sued both plaintiff and defendant.
The Oksenholt court rejected defendant’s argument that the case was one seeking recovery for economic loss caused by a physical injury to a third person. It found that defendant had an obligation to warn plaintiff physician of the drug’s side ef *722 fects, and the ramifications of any breach of that obligation, including economic loss, were recoverable as damages.
That court also concluded that the facts supported a cause of action for fraudulent misrepresentation. As here, the "plaintiff alleged that defendant published the information about the drug for the purpose of advising physicians like the plaintiff that the representations made by defendant were made with the intent that physicians, including plaintiff, rely on them, that plaintiff did rely on them, and was harmed as a result”. (Oksenholt v Lederle Labs., 294 Ore, at 223, 656 P2d, at 299, supra.)
In Washington State Physicians Ins. Exch. & Assn. v Fisons Corp. (122 Wash 2d 299, 858 P2d 1054), the Supreme Court of Washington found that that State’s Consumer Protection Act, essentially equivalent to New York’s General Business Law § 349, gave rise to a statutory cause of action in favor of a physician under facts equivalent to those under consideration.
Also, an unreported trial court verdict has been rendered in favor of a plaintiff such as the one at bar. In Conlee v McGhan Med. Corp. (No. 81-4062, Tex, Nuecas County Dist Ct, Dec. 15, 1983), a jury awarded $11.1 million, including $10 million punitive damages in favor of a physician against the manufacturer of inflatable breast prostheses, to compensate for mental anguish caused and income lost by plaintiff who was compelled to replace 48 defective products without charge. The action was founded upon theories of fraud and negligence.
Similarly, the Court of Appeals of this State (Kennedy v McKesson Co., 58 NY2d 500) held that a dentist had a cause of action against the manufacturer of an anesthetic machine. He arranged for the machine’s repair, and when it was returned, the color codes identifying oxygen and nitrous oxide were reversed. Defendant failed to inform plaintiff that connectors of differing sizes for the oxygen and nitrous oxide could have been installed which would have prevented improper connection. When plaintiff performed an extraction on a patient, he thought he was administering oxygen, but in reality gave her a deadly amount of nitrous oxide. The Court of Appeals held that a cause of action in negligence had been stated, entitling plaintiff to recover losses.
Defendant’s attempt to distinguish Kennedy (supra) by arguing that the defendant therein was a seller of services (the repairs) rather than a seller of goods as in the matter subjudice draws a distinction without a real difference. Defendant has not cited any authority that the distinction is relevant to the *723 issue of defendant’s liability as a matter of law, and this court can perceive none.*
Defendants also attack the complaint on the ground that it lacks sufficient particularity of the fraud claims. (CPLR 3016 [b].) In the court’s view, the complaint satisfies the particularity requirement. It must be remembered that this section "requires only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of and is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be 'impossible to state in detail the circumstances constituting a fraud’ ”. (Lanzi v Brooks, 43 NY2d 778, 780.) This is so especially in circumstances such as this, where plaintiff alleges, in large part, that material information was withheld from or misrepresented to him, and that the facts were peculiarly within defendant’s knowledge (Banner Indus. v Schwartz, 181 AD2d 479).
Defendants argue that plaintiff’s second cause of action, asserting the theory of negligence "per se”, must fall. They argue that plaintiff is not within the class of persons intended to be protected by statute, i.e., the Medical Device Amendments of 1976, set forth in 21 USC § 360c et seq. The Medical Device Amendments are silent on whether physicians such as plaintiff are within the protected class. However, there exists a duty under the Medical Device Amendments on the part of the manufacturer to warn the physician of any risks attendant to the use of the product, under the "learned intermediary doctrine” (Desmarais v Dow Corning Corp., 712 F Supp 13, 17-18). The failure to discharge or perform one’s duty to another when it is the proximate cause of one’s damages gives rise to a cause of action on behalf of the injured party (see, Becker v Schwartz, 46 NY2d 401, 410; Kennedy v McKesson, supra, 58 NY2d, at 504).
Two aspects of the damages sought to be recovered by plaintiff must be addressed. In paragraph 30 (f) of the complaint, which contains allegations common to all four causes of action, plaintiff asserts a "loss of income to his practice and other damages” which include "emotional harm” in having to deal with patients whose breast implants were defective. Such emotional injuries are not recoverable (Kennedy v McKesson, supra).
*724 Similarly, paragraph 30 (g) seeks recovery of loss of income due to the time necessarily spent on trials, depositions, and other litigation-related matters in which he was sued as a defendant. These items of plaintiffs purported lost income are too indirect to be compensable (Goldberg v Mallinckrodt, Inc., 792 F2d 305, 307-308).
Other than these items of damage, plaintiff is entitled to recovery for any losses he is able to demonstrate at trial (Kennedy v McKesson, supra).
Next, the court must address the issue of whether plaintiff has standing to sue under General Business Law § 349. Defendants argue that plaintiff, as a physician, is not a "consumer” of goods and services within the statute. However, the statute, by its terms, gives any person who has been injured due to a violation thereof the right to bring an action. The definition of "person” is much broader than "consumer”, embracing all possible plaintiffs, including business persons. (Note, New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor, 48 Brook L Rev 509, 527.) "[T]he * * * statute contains no language that can be construed as requiring either a causal connection between the purchase of an item and the injury or any kind of relationship between the injured plaintiff and the injuring defendant” (id., at 528). There is no requirement of privity, and victims of indirect injuries are permitted to sue under the Act. (Id.; see also, Washington State Physicians Ins. Exch. & Assn. v Fisons Corp., 122 Wash 2d 299, 312-313, 858 P2d 1054, 1060-1061, supra.) There is no reason why a physician under these circumstances cannot be treated as a "consumer” entitled to protection (see, Phelps v Sherwood Med. Indus., 836 F2d 296, 300-303). For these reasons, the motion by defendants Bristol-Myers Squibb Co., Surgitek, Inc., and Medical Engineering Corp., and the motion by defendant Dow Corning Corporation for an order dismissing the complaint for failure to state a cause of action is denied in all respects.
Plaintiff cross-moves for an order granting him leave to serve a written interrogatory upon defendants. The single interrogatory is narrow in scope, and seeks information as to similar claims and lawsuits made against defendants.
CPLR 3130 (1) provides in part: "In the case of an action to recover damages for personal injury, injury to property or wrongful death predicated solely on a cause or causes of action for negligence, a party shall not be permitted to serve interrogatories on and conduct a deposition of the same party pursuant to rule 3107 without leave of court.”
*725 The substance of the interrogatory is not objectionable, since discovery of similar incidents or claims is material in cases where a defect is alleged in the design or creation of a product (Kolody v Supermarkets Gen. Corp., 163 AD2d 276 [2d Dept]).
The statute cited above merely precludes use of both interrogatories and depositions predicated solely on a causé or causes of action for negligence without leave of court. Here, the action is not founded solely on theories of negligence. Further, the unique nature of this litigation, and the limited scope of the interrogatory, lean heavily in favor of such leave.
Accordingly, the motion is granted.
Finally, it appears that defendant Dow Corning Corporation has filed for bankruptcy protection in the United States Bankruptcy Court in Michigan since these motions were entered (NYLJ, May 25, 1995, at 5, col 4). Accordingly, all future proceedings in this action against Dow Corning are stayed until vacated by the Bankruptcy Court (11 USC § 362).

 The plaintiff in Kennedy (supra) was more in the nature of a "learned intermediary”, to whom a duty to warn may exist (see, Desmarais v Dow Corning Corp., discussed hereinafter).