Argued and submitted April 14, 1998, affirmed February 3, 1999

Patricia E. GRIFFITH,
*Appellant,*
*and*

Paddy O. GRIFFITH,
*Plaintiff,*

*v.*

Philip E. BLATT, M. D.;
and Reed & Carnick,
a division of Block Drug, Inc.,
a foreign corporation,
*Defendants,*
*and*

William A. STOUT,
doing business as Hollywood Prescriptions;
and Rugby Laboratories, Inc.,
a foreign corporation,
*Respondents.*

(9502-01211; CA A93458)

973 P2d 385

Lindsey H. Hughes argued the cause for appellant. With her on the brief was Hallmark, Keating & Abbott, P. C.

G. Kenneth Shiroishi argued the cause for respondent William A. Stout, doing business as Hollywood Prescriptions. With him on the brief were Joan O'Neill and Dunn, Carney, Allen, Higgins & Tongue.

Franklin Hunsaker argued the cause for respondent Rugby Laboratories, Inc. With him on the brief were Ronald E. Bailey, Marilyn E. Litzenberger, and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff[1] appeals, assigning error to the granting of summary judgment against her products-liability based claims against defendants Rugby Laboratories, Inc., the manufacturer of Lindane lotion, and William Stout, dba Hollywood Prescriptions, a pharmacist who filled plaintiff's prescription for Lindane lotion.[2] The trial court concluded that plaintiff's strict liability claims against Rugby and Stout were barred by the two-year general statute of limitations for product-liability civil actions, ORS 30.905(2), and that her claim against Stout for negligent failure to warn did not state a legally cognizable claim. We conclude that plaintiff's claim against Rugby is time-barred; that her strict liability claim against Stout is precluded under the "learned intermediary" doctrine; and that, with respect to negligent failure to warn, plaintiff failed to controvert Stout's proof that he had not breached the standard of care. Consequently, we affirm.

Viewing the summary judgment record most favorably to plaintiff as the nonmoving party, *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997), the material facts are as follows:

On February 26, 1993, plaintiff visited Dr. Philip Blatt, seeking treatment for a skin condition. Blatt gave plaintiff a prescription for two ounces of Lindane, one percent lotion, instructing the pharmacist to fill the prescription and to type "As directed" on the label. Plaintiff took that prescription to Stout, who filled the prescription, placing the lotion in a plain prescription bottle which bore generic "For external use only" and "Shake well" labels. In accordance with Blatt's instructions, Stout typed the notation "As directed" on the prescription label and affixed that label to the bottle. The bottle bore no other instructions or warnings. There is no evidence that Stout gave plaintiff any verbal instructions or

---

[1] "Plaintiff" in this opinion refers only to Patricia Griffith. Paddy Griffith, her husband, filed a claim for loss of consortium, but the disposition of that claim is not at issue on appeal.

[2] Plaintiff also asserted claims against two other defendants, Philip Blatt, M.D., and Reed & Carnick. The disposition of those claims is not at issue on appeal.

warnings concerning the lotion including, particularly, any warnings pertaining to frequency or duration of use.

Plaintiff applied the lotion over her entire body once a day, after her daily shower for five or six days until she had used the entire bottle. After each application, plaintiff did not shower for the next 24 hours. Properly used, Lindane lotion should be applied no more than two times and should be washed off within 12 hours after any application.

Within a week to two weeks after beginning to use the Lindane lotion, plaintiff began to suffer medical problems, including convulsions, dizziness, weight loss, hair loss, sleep disturbance, and cognitive disfunction. On June 10, 1993, plaintiff watched a segment of the television program "Good Morning America," which featured a report about a child who had suffered convulsions after overexposure to Lindane lotion. Immediately after that program, plaintiff retrieved her empty bottle of Lindane lotion and told her husband, "This is the same stuff." In August 1993, plaintiff consulted with a physician, who diagnosed her symptoms to be the result of central nervous system toxicity due to overexposure to Lindane lotion.

On February 23, 1995, plaintiff filed her original complaint, naming as defendants Blatt, Stout and Reed & Carnick, whom she mistakenly believed had manufactured the Lindane lotion. That complaint alleged: (1) a strict liability claim against Reed & Carnick, alleging that Lindane lotion was unreasonably dangerous in that it was sold without adequate instructions "reasonably calculated to reach the ultimate user" regarding its safe use or warnings that its use could lead to central nervous system toxicity and related health problems; (2) a medical malpractice claim against Blatt for, *inter alia,* prescribing the Lindane lotion and for failing to warn plaintiff of the dangers of its overuse; and (3) a negligence claim against Stout for failing to instruct plaintiff on the proper use of Lindane lotion and to warn her of the dangers of its overuse.

Plaintiff subsequently discovered that Rugby, not Reed & Carnick, was the manufacturer of the Lindane lotion that she had received and, consequently, dismissed Reed &

Carnick. On July 21, 1995, plaintiff filed an amended complaint. That amended complaint named Rugby as a defendant, asserting the same strict liability/failure to warn allegations that had been directed against Reed & Carnick. The amended complaint also alleged a strict liability claim against Stout, in addition to the original negligence claim. Those allegations were reiterated in plaintiff's second amended complaint, which was the object of Stout's summary judgment motion.[3]

On October 24, 1995, Stout moved for summary judgment or, in the alternative, to dismiss plaintiff's claims against him. Stout asserted that plaintiff's strict liability claim against him was time-barred because it was first alleged more than two years after plaintiff had experienced her symptoms within days of using the product—and, indeed, more than two years after the June 10, 1993, "Good Morning America" program. *See* ORS 30.905(2);[4] *Dortch v. A. H. Robins Co., Inc.,* 59 Or App 310, 650 P2d 1046 (1982) (applying "discovery rule" to product liability civil actions). Stout further asserted that both the strict liability claim and the negligence claim against him (whose timeliness he did not dispute) were precluded, as a matter of law, by the "learned intermediary" doctrine. *See McEwen v. Ortho Pharmaceutical,* 270 Or 375, 385-86, 528 P2d 522 (1974) (describing doctrine). While acknowledging that the question was unresolved in Oregon, Stout emphasized that most of the jurisdictions that had addressed the issue had concluded that, under the so-called "learned intermediary" doctrine, pharmacists could not be held either strictly liable or liable in negligence for failure to warn with respect to prescription drugs.

The trial court granted Stout's motion for summary judgment against both claims. The court determined that the strict liability claim was time-barred[5] and that the negligent

---

[3] The only difference between the first and second amended complaints was a minor amendment by interlineation in response to a Rule 21 motion by Blatt.

[4] ORS 30.905(2) provides, in part, that "a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."

[5] In so holding, the court rejected plaintiff's argument that her strict liability claim related back to the filing of the original complaint. Given that disposition, the

failure to warn claim was barred by the "learned intermediary" doctrine.

In April 1996, Rugby moved for summary judgment, arguing *inter alia* that plaintiff had failed to bring her strict liability claim against it within the two-year statute of limitations. ORS 30.905(2). Like Stout, Rugby contended that plaintiff's strict liability claim accrued no later than the date she saw the "Good Morning America" program and that claimant had failed to bring that claim within two years of that date. Plaintiff opposed the motion, arguing *only* that conduct by defense counsel had resulted in a "procedural delay" that prevented her from timely filing her claim against Rugby and that, in all events, she did not actually discover that Rugby was the source of the Lindane lotion until her husband received certain information from the federal Food and Drug Administration in March 1996.[6] The trial court rejected plaintiff's arguments and agreed with Rugby that the claim accrued by no later than the date of the "Good Morning America" program and, consequently, granted Rugby's motion for summary judgment.

■　　Plaintiff appeals, assigning error to the trial court's allowance of summary judgment for both Rugby and Stout. We first summarily reject plaintiff's arguments as to Rugby. As noted, plaintiff's arguments to the trial court in opposing summary judgment on the basis of the statute of limitations were limited and precise. On appeal, plaintiff does not rely on those arguments but, instead, advances new and qualitatively different arguments which, if raised below, might well have affected the development of the evidentiary record. Because plaintiff's arguments differ so substantially from her arguments to the trial court, we decline to address them and affirm the allowance of summary judgment for Rugby. *See generally State v. Hitz,* 307 Or 183, 188, 766 P2d 373 (1988); *J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.,* 132 Or App 565, 567-68, 889 P2d 383, *rev den* 321 Or 47 (1995).

trial court characterized Stout's "learned intermediary" contention with respect to the strict liability claim as "moot."

[6] Plaintiff did not explain why she named Rugby as a defendant in July 1995 if she could not reasonably have known that Rugby was the source of the allegedly defective product until March 1996.

**2.**    Turning to plaintiff's claims against Stout, plaintiff argues, as she did before the trial court, that, because of relation back, her strict liability claim is not time-barred and that the "learned intermediary" doctrine precludes neither her strict liability nor her negligence claim. We conclude, for the reasons that follow, that, even assuming that plaintiff's strict liability claim was timely, proper application of the "learned intermediary" doctrine bars that claim. We further conclude that, because plaintiff failed to offer any expert testimony controverting Stout's evidence that he had not breached any applicable standard of care for pharmacists pertaining to warning of dangers of prescription drugs, summary judgment against plaintiff's negligence claim was also proper. *See Docken v. Ciba-Geigy*, 101 Or App 252, 256, 790 P2d 45, *rev den* 310 Or 195 (1990) (*Docken II*).

■    Under the "learned intermediary" doctrine, a manufacturer of a prescription pharmaceutical product satisfies its duty to warn of the risk associated with the use of that product if it communicates adequate warnings to the prescribing physician. Thus, "the duty of the ethical drug manufacturer is to warn the doctor, rather than the patient." *McEwen*, 270 Or at 386-87. Nevertheless, "the manufacturer is directly liable to the patient for a breach of such duty." *Id*. In *Terhune v. A. H. Robins Co.*, 90 Wash 2d 9, 577 P2d 975 (1978), the court explained the doctrine's underpinnings:

> "Where a product is available only on prescription or through the services of a physician, the physician acts as a 'learned intermediary' between the manufacturer or seller and the patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon that judgment. The physician decides what facts should be told to the patient. Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his

own independent learning, in the best interest of the patient." 89 Wash 2d at 14.

*See also McEwen,* 270 Or at 387 ("The manufacturer's compliance with this duty enables the prescribing physician to balance the risk of possible harm against the benefits to be gained by the patient's use of that drug.").

No Oregon appellate decision has addressed the application of the "learned intermediary" doctrine to claims arising from a pharmacist's failure to warn of the risks associated with a prescription drug.[7] Indeed, only two Oregon cases have discussed the doctrine in detail in any context: *McEwen* and *Oksenholt v. Lederle Laboratories,* 51 Or App 419, 424-26, 625 P2d 1357 (1981), *aff'd as modified* 294 Or 213, 656 P2d 293 (1982). Beyond their general endorsement of the "learned intermediary" principle, neither of those cases affords particular guidance here.[8]

---

[7] As described more fully below, in *Docken v. Ciba-Geigy,* 86 Or App 277, 739 P2d 591 (1987) (*Docken I*), affirmed following remand in *Docken II*, the plaintiff alleged negligence and strict liability claims against a pharmacist for failing to warn of a prescription drug's dangerous propensities. However, in affirming the dismissal of the strict liability claim in *Docken I*, and in affirming the defense verdict on the negligence claim in *Docken II*, we did not refer to the "learned intermediary" doctrine.

[8] In *McEwen*, the plaintiff, who had become blind in one eye, brought a negligence action against two manufacturers of oral contraceptives, asserting that they had failed to adequately warn the medical profession of potential adverse effects, specifically including retinal hemorrhaging. A jury trial resulted in judgments against both defendants. On appeal, the Supreme Court affirmed. Central to the court's holding was its analysis of the scope of the manufacturer's duty to warn and, in describing that duty, the court endorsed the "learned intermediary" doctrine. *McEwen*, 270 Or at 386-407 (adopting "learned intermediary" doctrine and concluding that manufacturers had failed to convey adequate warnings to prescribing and treating physicians).

In *Oksenholt*, we reversed dismissal of the plaintiff physician's negligence action against the defendant drug manufacturer for damages resulting from loss of reputation, earning capacity and income, that allegedly arose from the manufacturer's failure to warn him that the defendant's drug, which the plaintiff had prescribed, could cause blindness. In so holding, we rejected the defendant's argument that its duty to warn a prescribing physician was "solely for the protection of the patient and, therefore, breach of the duty gives rise to a cause of action in the patient alone." *Oksenholt*, 51 Or App at 424. On review, the Supreme Court held that we had erred in "analyz[ing] the problem solely in terms of foreseeability," *Oksenholt v. Lederle Laboratories*, 294 Or 213, 219, 656 P2d 293 (1982), and concluded that the physician's claim against the manufacturer was appropriately analyzed as a claim for negligence *per se*, arising out of the manufacturer's breach of certain federal regulations prescribing the content of drug warnings. *Id.* at 219-20.

Notwithstanding the paucity of Oregon law, courts in several other jurisdictions have considered whether pharmacists should be strictly liable for failure to warn of a prescription drug's dangerous propensities. Invoking the "learned intermediary" doctrine, those courts, apparently without exception, have refused to impose such liability. *See, e.g., Raynor v. Richardson-Merrell, Inc.,* 643 F Supp 238, 246-47 (DDC 1986); *Ramirez v. Richardson-Merrell, Inc.,* 628 F Supp 85, 87-88 (ED Pa 1986); *Batiste v. American Home Products Corp.,* 32 NC App 1, 11, 231 SE2d 269, 275, *cert den* 292 NC 466, 233 SE2d 921 (1977); *Bichler v. Willing,* 58 App Div 2d 331, 334, 397 NYS2d 57, 59 (1977); *Leesley v. West,* 165 Ill App 3d 135, 140, 518 NE2d 758, 762, *app den* 119 Ill 2nd 558, 522 NE2d 1246 (1988).

*Ramirez* is exemplary. There, the plaintiffs asserted, *inter alia*, a strict liability claim against a pharmacist, alleging that the pharmacist had failed to warn of the risk of birth defects associated with the prescription drug Bendectin. The court allowed summary judgment against that claim. After noting that, under the "learned intermediary" doctrine, "the warning required [of the manufacturer] is not to the general public or to the patient, but to the prescribing physician," *Ramirez*, 628 F Supp at 87, the court applied that doctrine:

> "It would be illogical and unreasonable * * * to impose a greater duty on the pharmacist or druggist who properly fills the prescription than is imposed on the manufacturer. Holding that the pharmacist has a duty to warn the patients directly of the potential hazards when the manufacturer does not have that duty would be to impose that greater duty. Similarly, although a prescription drug may be considered defective if the manufacturer fails to warn the prescribing physician adequately, thereby subjecting the manufacturer to strict liability, this warning need not accompany the product to the patient. * * * It follows therefore that the product dispensed by the pharmacist is not defective because of the absence of a warning." *Id.*

Similarly, in *Leesley*, the Illinois Court of Appeals held that a pharmacist could not be liable on a strict liability theory for failing to warn of risks associated with use of the

prescription drug Feldene. After reviewing the "learned intermediary" doctrine, the court concluded:

"[T]he manufacturer's duty to warn extends only to prescribing physicians. We must conclude, therefore, that where the manufacturer gives the required warnings to the prescribing physician and the drug is distributed in the usual manner (*i.e.*, prescribed for the plaintiff by a physician), the drug is not an unreasonably dangerous product. * * * To illustrate, Pfizer [the manufacturer] shipped a bulk container of Feldene to [the pharmacy] with only a single package insert. Because Pfizer had no duty to provide warnings directly to customers, the product as shipped was not unreasonably dangerous (and would not have been even if no inserts had been included at all). We would have to conclude that the product somehow became unreasonably dangerous in [the pharmacy's] hands in order to hold [the pharmacy] was nevertheless required, at the risk of being held strictly liable, to provide every customer whose prescription was filled from that bulk container with a copy of the information contained in that single package insert. Such a conclusion would obviously be unreasonable. We therefore conclude that it would be illogical and inequitable under a strict liability theory to impose a duty on the pharmacist with respect to a prescription drug that is not imposed on the drug's manufacturer." *Leesley*, 165 Ill App 3d at 140.

We find that reasoning persuasive and consistent with Oregon's endorsement of the "learned intermediary" principle. Accordingly, we affirm the trial court's dismissal of plaintiff's strict liability claim against defendant Stout.

■ Plaintiff's alternative claim for negligent failure to warn fails for a different reason: Plaintiff failed to proffer expert testimony "as to the standard of care [for pharmacists] for warning of dangers of a prescription drug." *Docken II*, 101 Or App at 256.

The *Docken* litigation involved claims arising from the death of one sibling who had ingested medication prescribed for another sibling. The plaintiff brought an action against the drug manufacturer, the prescribing physician, and the pharmacy that filled the prescription, alleging claims

of strict liability based on "inadequate labeling and insufficient warnings" and negligent failure to warn. *Docken I*, 86 Or App at 279. The trial court dismissed those claims.

On appeal, in *Docken I*, we affirmed in part and reversed in part. With respect to the pharmacy, we affirmed the dismissal of the strict liability claim because the plaintiff had failed to allege that the pharmacy was "in the business of selling the drug." *Id.* at 282.[9] However, we reversed the dismissal of the negligent failure to warn claims, rejecting the defendants' argument that they did not "owe[ ] a duty of care to someone for whom the drug is not prescribed if injur[y] result[s] from that person's taking the drug." *Id.* at 280. Thus, in *Docken I*, we recognized the viability of a claim against a pharmacist for negligent failure to warn.[10] In so holding, we relied solely on the freshly minted *Fazzolari* "reasonable foreseeability" standard. *See id.* at 280-81.

On remand, the jury returned a defense verdict for the pharmacy on the negligence claims. The plaintiff appealed, contending that the trial court had given erroneous jury instructions. The pharmacy cross-assigned error, asserting that the court had erroneously denied its motion for a directed verdict because "plaintiff provided no evidence of one of the elements of her cause of action, a breach of the standard of care in the community." *Docken II*, 101 Or App at 255. We agreed with the pharmacy that the trial court had so erred and, consequently, affirmed on that alternative ground. In so holding, we described the parties' contending positions in terms that are directly applicable to this appeal:

> "Plaintiff argues that the jury could determine without the aid of experts that a prescription drug is dangerous and requires a pharmacist independently to warn of its hazards, regardless of the instructions of the prescribing physician or any statutory requirements to warn. Plaintiff provided evidence that an overdose of Imipramine was potentially

---

[9] Because of that disposition, we had no occasion to consider the pharmacy's alternative argument, presented in its briefs, that the "learned intermediary" doctrine precluded imposition of strict liability.

[10] As noted, *see* n 7 above, our opinion in *Docken I* did not refer to the "learned intermediary" doctrine or consider the appropriate relationship between that doctrine and *Fazzolari's* analysis.

fatal and that there was no warning by defendant's pharmacy. Plaintiff argues that, with that evidence, the jury could find that a duty to warn existed and was breached. Defendant argues that expert testimony is required to prove the community standard of care for a pharmacist and that plaintiff provided no evidence that the community standard was not met. Because no expert testified that the standard in the professional community required a pharmacist to warn of the hazards of this prescription drug, defendant argues that no breach of due care could be found, even if the warning were lacking." *Id.* at 255.

We then concluded:

"In the earlier appeal in this case, we did not discuss what evidence would be required to show that the standard of care had not been met. Considering the complex relationship between a physician, the patient and a pharmacist, we hold that an expert must testify as to the standard of care in the community for warning of dangers of a prescription drug before a jury may determine that such a standard was breached." *Id.* at 256.[11]

*See also Tiedemann v. Radiation Therapy Consultants*, 299 Or 238, 242-45, 701 P2d 440 (1985); *Getchell v. Mansfield*, 260 Or 174, 179, 489 P2d 953 (1971) (both addressing requirements of expert testimony in professional malpractice actions).

That reasoning is decisive here. In moving for summary judgment, defendant Stout submitted an affidavit averring that, as a pharmacist, he was "familiar with the reasonable standard of care of pharmacists in the same or similar circumstances in this community" and that "all of [his] actions as related to dispensing the prescription and warnings in this case were within the reasonable standard of care for pharmacists in this community." Plaintiff offered no

---

[11] We qualified that conclusion with an observation:

"We do not comment on the standard of care in other circumstances, such as when a pharmacist sells a nonprescription substance or when a pharmacist has personal knowledge of a customer's medical condition." *Docken II*, 101 Or App at 256 n 4.

Neither of those circumstances is present here.

expert testimony controverting those averments.[12] Consequently, the trial court correctly granted summary judgment. *See Tiedemann,* 299 Or at 242-45; *Docken II,* 101 Or App at 255.

Affirmed.

---

[12] *Compare, e.g., Lasley v. Shrake's Country Club Pharmacy,* 179 Ariz 583, 880 P2d 1129, 1134 (Ariz App Div I 1994) (reversing dismissal of negligent failure to warn claim against pharmacist where plaintiff presented an expert affidavit describing the standard of care as including a duty to warn in the particular circumstances presented, as well as excerpts from the American Pharmaceutical Association Standards of Practice for the Profession of Pharmacy).