Argued and submitted January 9, 2001, decision of Court of Appeals and judgment of circuit court reversed and case remanded to circuit court for further proceedings August 15, 2002

Patricia E. GRIFFITH,
*Appellant,*
*Petitioner on Review,*
*and*

Paddy O. GRIFFITH,
*Plaintiff,*

*v.*

Philip E. BLATT, M.D.;
and Reed & Carnick,
a division of Block Drug Company, Inc.,
a foreign corporation,
*Defendants,*

*and*

William A. STOUT,
doing business as Hollywood Prescriptions;
and Rugby Laboratories, Inc.,
a foreign corporation,
*Respondents,*
*Respondents on Review.*

(CC 9502-01211; CA A93458; SC S46476)

51 P3d 1256

Lindsey Harris Hughes of Keating Jones Bildstein & Hughes, P.C., Portland, argued the cause for petitioner on review.

G. Kenneth Shiroishi of Dunn Carney Allen Higgins & Tongue, L.L.P., Portland, argued the cause for respondent on review, William A. Stout.

I. Franklin Hunsaker of Bullivant Houser Bailey, P.C., Portland, argued the cause for respondent on review, Rugby Laboratories, Inc.

Todd A. Bradley of Gaylord & Eyerman, P.C., Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs Justices.**

DURHAM, J.

---

** Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## DURHAM, J.

Plaintiff Patricia E. Griffith seeks review of a decision of the Court of Appeals that affirmed the trial court's summary judgment against plaintiff on her claims against defendants Rugby Laboratories, Inc. (Rugby) and Stout.[1] *Griffith v. Blatt*, 158 Or App 204, 973 P2d 385 (1999). Plaintiff claimed that she was injured when she used a lotion, Lindane, that her physician had prescribed. Rugby manufactured the lotion and Stout, a pharmacist, filled the prescription. Plaintiff argued that neither her physician nor Stout had warned her that Lindane was toxic if used improperly. The Court of Appeals determined that plaintiff's claim against Rugby was not timely filed and that the "learned intermediary" doctrine protected Stout from liability. We discuss that doctrine in greater detail later in this opinion. We affirm the Court of Appeals' determination that the claim against Rugby was untimely, but conclude that the learned intermediary doctrine does not protect Stout from liability in this case. Therefore, we reverse the decision of the Court of Appeals and remand the case to the trial court for further proceedings.

Because the trial court dismissed plaintiff's action on summary judgment, ORCP 47, we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff, the party opposing summary judgment. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). The Court of Appeals applied that standard in summarizing the evidence as follows:

> "On February 26, 1993, plaintiff visited Dr. Philip Blatt, seeking treatment for a skin condition. Blatt gave plaintiff a prescription for two ounces of Lindane, one percent lotion, instructing the pharmacist to fill the prescription and to type 'As directed' on the label. Plaintiff took that prescription to Stout, who filled the prescription, placing the lotion in a plain prescription bottle which bore generic 'For external use only' and 'Shake well' labels. In accordance with Blatt's instructions, Stout typed the notation 'As directed'

---

[1] The claims of plaintiff Paddy O. Griffith are not before this court on review. Plaintiff's complaint identifies defendant Stout as "William A. Stout, doing business as Hollywood Prescriptions." In this opinion, we refer to that party as "Stout."

on the prescription label and affixed that label to the bottle. The bottle bore no other instructions or warnings. There is no evidence that Stout gave plaintiff any verbal instructions or warnings concerning the lotion including, particularly, any warnings pertaining to frequency or duration of use.

"Plaintiff applied the lotion over her entire body once a day, after her daily shower for five or six days until she had used the entire bottle. After each application, plaintiff did not shower for the next 24 hours. Properly used, Lindane lotion should be applied no more than two times and should be washed off within 12 hours after any application.

"Within a week to two weeks after beginning to use the Lindane lotion, plaintiff began to suffer medical problems, including convulsions, dizziness, weight loss, hair loss, sleep disturbance, and cognitive dysfunction. On June 10, 1993, plaintiff watched a segment of the television program "Good Morning America," which featured a report about a child who had suffered convulsions after overexposure to Lindane lotion. Immediately after that program, plaintiff retrieved her empty bottle of Lindane lotion and told her husband, 'This is the same stuff.' In August 1993, plaintiff consulted with a physician,[2] who diagnosed her symptoms to be the result of central nervous system toxicity due to overexposure to Lindane lotion."

*Griffith v. Blatt*, 158 Or App at 207-09.

On February 23, 1995, plaintiff filed claims for negligence against Stout, for medical malpractice against Dr. Blatt, and for strict liability against Reed & Carnick, a drug manufacturing company. On June 12, 1995, plaintiff stipulated to a dismissal of its claims against Reed & Carnick.

On June 21, 1995, plaintiff filed an amended complaint that alleged a medical malpractice claim against Blatt,

---

[2] Plaintiff correctly points out that, according to the record, plaintiff consulted with her physician regarding her symptoms in July 1993, and first received, in August 1993, the physician's diagnosis that her use of Lindane lotion had made her ill. We rely on those facts, rather than the slightly different facts stated in the Court of Appeals opinion, but conclude that the factual differences do not affect our analysis or disposition.

a strict liability claim against Rugby, and added a strict liability claim to the negligence claim against Stout.[3]

On Stout's motion for summary judgment, the trial court concluded that ORS 30.905(2) barred plaintiff's product liability claim against Stout. ORS 30.905(2) provides:

> "Except as provided in ORS 30.907 and 30.908(1) to (4), a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."

The trial court also dismissed plaintiff's negligence claim against Stout.

On Rugby's motion for summary judgment, the trial court concluded that ORS 30.905(2) barred plaintiff's product liability claim against Rugby. The court reasoned that, even if the two-year limitations period commenced when plaintiff discovered her injury rather than when the injury occurred, plaintiff had discovered her injury, at the latest, when she watched the "Good Morning America" program on June 10, 1993. Therefore, according to the court, the period of limitations began running more than two years before June 21, 1995, when plaintiff filed her amended complaint that named Rugby as a defendant.

Plaintiff appealed. Plaintiff argued that Rugby had failed to establish that plaintiff had discovered her claim against Rugby more than two years before plaintiff had filed her amended complaint that named Rugby. The Court of Appeals declined to address plaintiff's arguments, opining that her arguments on appeal differed from those presented to the trial court. *Griffith*, 158 Or App at 210.

---

[3] The claims against Stout are compatible but not identical bases of liability. According to John W. Wade et al., *Prosser, Wade and Schwartz's Cases and Materials on Torts*, 694 (9th ed 1994):

> " 'Products liability' is the umbrella term for the liability of a manufacturer, seller or other supplier of chattels, to one with whom he is not in privity of contract, who suffers physical harm caused by the chattel. The liability may rest upon the supplier's negligence or upon a warranty, or it may be based on strict liability in tort."

The Court of Appeals assumed for purposes of analysis that plaintiff's strict liability claim against Stout was timely, but concluded that the learned intermediary doctrine barred that claim. *Id.* at 211. The Court of Appeals also concluded that plaintiff's negligence claim against Stout failed because plaintiff did not controvert Stout's affidavit averring that his conduct satisfied the pertinent standard of care for pharmacists. *Id.* at 217.

We first address the timeliness of plaintiff's claim against Rugby. As already noted, the Court of Appeals concluded that plaintiff's arguments on appeal differed from those that she had presented to the trial court and declined to address them. That response was correct with respect to some of plaintiff's arguments in the trial court, such as whether plaintiff's delay in filing a claim against Rugby was due to the tardiness of some defendants in responding to plaintiff's request to file an amended complaint. However, plaintiff also contended, both in the trial court and on appeal, that summary judgment was not appropriate on Rugby's statute of limitations defense because the record demonstrated the existence of a factual dispute about when plaintiff had discovered that Rugby had injured her. Plaintiff challenged the trial court's contrary conclusion by citing evidence in the record that arguably pointed to a different answer. However, she did not abandon her argument, summarized above, merely by highlighting on appeal other evidence that, in her view, also undermined the trial court's conclusion. It follows that the Court of Appeals erred in disposing of plaintiff's arguments on preservation grounds. Consequently, we proceed to the merits of plaintiff's assignment that the trial court erred in granting summary judgment on Rugby's statute of limitations defense.

Rugby's defense requires the court to apply ORS 30.905(2). In addressing that question, the parties assumed, from several opinions of the Court of Appeals, that the limitations period in ORS 30.905(2) began running on the date that plaintiff discovered her injury and the relationship of Rugby's tortious conduct to that injury. To test that assumption, this court invited supplemental briefing from the parties on the following question: "Does the discovery rule apply to ORS 30.905(2)?" Understandably, the parties disagree

about the answer to that question. However, for the reason stated below, this court need not examine the parties' dispute over that question.

In *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 26 P3d 817 (2001), this court interpreted ORS 30.905(2) and concluded that that statute does not incorporate a discovery rule. The court determined instead that the limitations period in that statute commences when the plaintiff's injury occurs, whether or not the plaintiff has discovered the injury at that time. *Id.* at 234. Plaintiff contends that the court should not follow *Gladhart* here because Rugby failed to argue below that ORS 30.905(2) did not incorporate a discovery rule. We reject that argument because, as a practical matter, it would compel this court to apply the statute in a manner that this court already has rejected.

According to *Gladhart*, the two-year period of limitations in ORS 30.905(2) commenced when plaintiff's injury occurred. Plaintiff used Lindane lotion for several days after she filled her prescription for the lotion on February 26, 1993. She experienced adverse symptoms within a week or two. However, plaintiff first filed her amended complaint that named Rugby as a defendant on June 21, 1995. Because plaintiff filed her product liability claim against Rugby more than "two years after the date on which the * * * injury or damage complained of occur[red,]" ORS 30.905(2), that claim is time-barred. Consequently, the trial court did not err in granting summary judgment for Rugby on that claim.

We next address plaintiff's claims for negligence and for strict liability against Stout. On review, plaintiff asserts that she does not concede that Stout was entitled to summary judgment on her negligence claim, but she presents no argument against that conclusion. In the absence of such an argument, we affirm the decision of the Court of Appeals on that issue without further discussion.

We turn to the issue of the timeliness of plaintiff's strict liability claim against Stout. As noted above, plaintiff first alleged that claim in the amended complaint that she filed on June 21, 1995. Plaintiff argues that that claim is timely because, among other reasons, it relates back to the filing date of her original negligence complaint against

Stout—February 23, 1995—and, consequently, the amended complaint satisfies the two-year limitation period set out in ORS 30.905(2). In response, Stout asserts that the amended complaint does not relate back because the strict liability and negligence claims involve different proof requirements and are subject to different defenses.

The rule that controls the relation back of a claim alleged in an amended pleading is ORCP 23 C, which provides, in part:

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

In applying that rule, the court first must identify the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Second, the court must determine whether the claim or defense alleged in the amended pleading *arose out of* that conduct, transaction, or occurrence.

The legislature made ORCP 23 C effective and first operative on January 1, 1980, as one of the original provisions of the Oregon Rules of Civil Procedure. Or Laws 1979, ch 284, §§ 3, 201. ORCP 23 C codified the relation back doctrine that this court had followed for many years in applying statutes of limitation to amended pleadings. *See Brackhahn v. Nordling,* 269 Or 667, 670-75, 526 P2d 221 (1974) (illustrating proposition and providing examples). Because the legislature intended to codify rather than to alter this court's relation-back doctrine case law, that case law provides helpful insight regarding the legislature's intention in enacting ORCP 23 C.

Plaintiff's original complaint, filed on February 23, 1995, alleged that plaintiff took a prescription for a lotion to Stout's business, Hollywood Prescriptions, to be filled; that Hollywood Prescriptions was negligent in failing to provide instructions regarding proper use and warnings regarding the dangers of overuse of the lotion; and that she used the lotion and suffered numerous injuries.

Plaintiff's first amended complaint, filed on June 21, 1995, added a claim for strict liability against Hollywood Prescriptions. The strict liability claim realleged the material allegations of the negligence claim, summarized above. That claim also alleged that Hollywood Prescriptions distributed the lotion and that it "was dangerously defective and unreasonably dangerous in that it was sold without adequate instructions as to its safe use, and adequate warnings that its use could lead to [medical injuries]."

■ ■  The foregoing review of plaintiff's original and amended pleadings demonstrates that her strict liability claim against Stout arose out of the same conduct, transaction, or occurrence that gave rise to her original negligence claim against that defendant, specifically, the alleged inadequacy of Stout's instructions and warnings regarding proper use of the lotion. Stout is correct in arguing that the proof requirements for those claims are not identical, but the presence of different or additional issues in an amended pleading does not preclude application of the relation-back rule. *See Caplener v. U.S. National Bank,* 317 Or 506, 525, 857 P2d 830 (1993) (stating that ORCP 23 C relates back amended pleading that adds "new theories of liability in tort * * * [if they] arose out of the same conduct, transaction, or occurrence alleged in the original pleading"); *Brackhahn,* 269 Or at 673 ("Relating back is permitted although the different cause of action in the amended complaint involves some issues which are different or in addition to those presented by the original complaint."). Because plaintiff's strict liability claim against Stout relates back to the date of her original pleading by operation of ORCP 23 C, that claim was filed timely under ORS 30.905(2).

■  We turn finally to plaintiff's challenge to the Court of Appeals' determination that the learned intermediary doctrine bars plaintiff's strict liability claim against Stout. Stout asserts that this court should incorporate that doctrine into Oregon strict liability law from the common law of negligence. This court has discussed aspects of that doctrine in two common-law negligence cases. *See Oksenholt v. Lederle Laboratories,* 294 Or 213, 218, 656 P2d 393 (1982) (discussing applicability of doctrine in law of negligence); *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 385-90, 528 P2d 522

(1974) (same). The difficulty with Stout's argument is that it is not germane to a strict liability claim. The legislature has created a different prototype—a statutory scheme—that controls the disposition of strict liability claims. *See Kambury v. DaimlerChrysler Corp.*, 334 Or 367, 374, 50 P3d 1163 (2002) (so noting in context of claim for remedy for death caused by product defect). The Court of Appeals' analysis of the learned intermediary doctrine failed to acknowledge that Oregon statutes, not the common law, govern plaintiff's strict liability claim and Stout's defenses. As the following discussion demonstrates, this court's consideration of Stout's defense based on the learned intermediary doctrine begins and ends with our construction of the pertinent product liability statutes.

ORS 30.900 provides the following definition for a "product liability civil action":

"As used in ORS 30.900 to 30.920, 'product liability civil action' means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:

"(1)   Any design, inspection, testing, manufacturing or other defect in a product;

"(2)   Any failure to warn regarding a product; or

"(3)   Any failure to properly instruct in the use of a product."

Plaintiff's strict liability and negligence claims both constituted a "product liability civil action." ORS 30.920 provides the elements of a strict product liability claim:

"(1)   One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a)   The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b)   The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

"(2)   The rule stated in subsection (1) of this section shall apply, even though:

"(a)   The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b)   The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.

"(3)   It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965). All references in these comments to sale, sell, selling or seller shall be construed to include lease, leases, leasing and lessor.

"(4)   Nothing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence or under ORS chapter 72."

Neither the text nor the context of those statutes indicates that the legislature intended to relieve a seller from potential strict product liability on the basis of the adequacy of a manufacturer's product warnings to another intermediary (here, the physician). By contrast, section 402A of the *Restatement (Second) of Torts,* referred to in ORS 30.920(3), indicates that the legislature intended to create no such protection from strict liability.

*Restatement (Second) of Torts* § 402A, comment h (1965), provides in part that if a seller of a product

"has reason to anticipate that danger may result from a particular use, *as where a drug is sold which is safe only in limited doses* * * * [the seller] may be required to give adequate warning of the danger (see Comment j), and a product sold without such warning is in a defective condition."

(Emphasis supplied.) Comment j to that section requires a seller to give a warning if the seller "has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge" of the danger.

Pursuant to ORS 30.920(3), we must construe ORS 30.920(1) and (2) "in accordance with" the cited comments to *Restatement (Second) of Torts* § 402A, including the two comments quoted above. The quoted comments indicate that a

seller of a drug may be required to give an adequate warning of the product's danger to a consumer when the seller has knowledge or should have knowledge of the danger.

■■ At this stage of the case, we need not address precisely the extent of Stout's potential liability to plaintiff under ORS 30.920 for a failure to warn. It is sufficient for present purposes to conclude that, contrary to Stout's argument, Oregon's product liability statute does not create a defense to strict liability based on the learned intermediary doctrine. We conclude, therefore, that Stout was not entitled to summary judgment on plaintiff's strict liability claim.

The decision of the Court of Appeals and the judgment of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings.