Argued and submitted March 13, 2008, affirmed March 4, 2009

Suzanne K. MASON,
personal representative of the estate of
Thomas G. Mason, Deceased,
*Plaintiff-Appellant,*

*v.*

MT. ST. JOSEPH, INC.,
an Oregon non-profit corporation;
Rose, Breedlove & McConnell, Inc.,
an Oregon corporation;
Providence Health System-Oregon,
an Oregon non-profit corporation;
and Metropolitan Life Insurance Co.,
a New York corporation,
*Defendants,*

*and*

GENERAL ELECTRIC COMPANY,
a New York corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
050808090; A133639

203 P3d 329

Meagan A. Flynn argued the cause for appellant. With her on the briefs was Preston Bunnell & Flynn LLP.

George S. Pitcher argued the cause for respondent. With him on the brief were Williams, Kastner & Gibbs PLLC and Christopher S. Marks, Seattle, Washington.

Before Wollheim, Presiding Judge, and Armstrong, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Plaintiff, the personal representative of the estate of Thomas Mason, brought three claims against defendant General Electric Co. (GE) under Oregon's product liability law, ORS 30.900 to 30.920,[1] for Mason's death from mesothelioma. Mason's death was allegedly caused by his exposure to asbestos-containing products during his work as a carpenter on a construction project for GE in 1968. The trial court determined that plaintiff failed to plead a strict liability claim under Oregon's product liability law, that statutes of limitation applicable to "product liability civil actions" did not apply to the claims, and that the claims were therefore barred under the 10-year general negligence statute of ultimate repose, ORS 12.115.[2] The trial court dismissed plaintiff's claims on those bases and entered a limited judgment pursuant to ORCP 67 B. Plaintiff appeals, asserting three assignments of error. We conclude that the trial court did not err and affirm.

We assume the truth of the facts as set out in the second amended complaint, as well as any facts that might conceivably be adduced in proof of the pleading. *Beals v. Breeden Bros., Inc.*, 113 Or App 566, 570, 833 P2d 348, *rev den*, 314 Or 727 (1992). We review the trial court's granting of GE's motion to dismiss plaintiff's product liability claims for errors of law, viewing the allegations, as well as all reasonable inferences, in the light most favorable to plaintiff, the nonmoving party. *Strizver v. Wilsey*, 210 Or App 33, 35, 150 P3d 10 (2006), *rev den*, 342 Or 474 (2007); *Simonsen v. Ford*

---

[1] ORS 30.900, defining "product liability civil action," was enacted as part of the initial statutes regulating product liability civil actions in 1977. Or Laws 1977, ch 843, § 1. ORS 30.920, fixing the strict liability of persons for the sale or lease of dangerously defective products, was adopted two years later with express legislative direction that the statutory provision "is added to and made part of ORS 30.900 to 30.915." Or Laws 1979, ch 866, § 1.

[2] ORS 12.115 provides: "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of." In contrast, ORS 30.907 allows for a product liability claim based on asbestos exposure to "be commenced not later than two years after the date on which the plaintiff first discovered, or in the exercise of reasonable care should have discovered, the disease and the cause thereof."

*Motor Co.*, 196 Or App 460, 102 P3d 710 (2004) (liberal construction of operative pleading in assessing sufficiency of claims under applicable statute of limitations).

In 1968, GE engaged contractors to partially demolish and expand its Portland Apparatus Division Warehouse. Mason's employer was one of those contractors. Mason, working as a carpenter on the project, was exposed to fibers from asbestos-containing products that were removed from the demolished structure and reused in the new construction at the direction of GE. Those recycled products had been purchased by GE and used in the original construction of the warehouse in 1953. Mason was also exposed to new asbestos-containing products that GE directed Mason's employer to purchase and use in the 1968 demolition and expansion project. The asbestos-containing products were sold to GE by unidentified entities, named in the complaint as defendants "John Doe Corporations 1-5." The products were sold by John Doe corporations to GE in an unreasonably dangerous and defective condition. As a result of Mason's exposure to those products during the 1968 project, he developed mesothelioma, a cancer of the pleura, resulting in his death on November 13, 2004.

Plaintiff pleaded three claims against GE. In her third claim for relief, she alleged that GE was negligent in causing the harms to Mason, in its direction to Mason's employer to install asbestos-containing products, and in its failure to warn of the risk of exposure to those products or to advise Mason of ways to reduce the risk of harm from that exposure. In her fourth and eighth claims for relief, plaintiff sought to hold GE vicariously liable for her product liability and negligence claims against the John Doe corporations arising from their sale or distribution of the asbestos-containing products. Plaintiff claimed that GE was vicariously liable with the seller or distributor of the products because it required the purchase or reuse of those products.

The trial court dismissed the common-law negligence and vicarious liability negligence claims, reasoning that plaintiff had failed to state product liability civil actions against GE under ORS 30.900 and that the ORS 30.907 period of limitations for product liability claims for damages

resulting from asbestos-related disease therefore did not apply. The trial court concluded that the negligence claims were time barred under ORS 12.115. It further concluded that the second amended complaint did not state a claim against GE based on any vicarious liability for the conduct of a seller or distributor of a dangerously defective product under ORS 30.920. The trial court then entered a limited judgment for GE under ORCP 67 B.[3] Plaintiff's three assignments of error on appeal address each of those rulings, and we consider them in turn.

We first note the statutory context for the claims. Oregon's product liability law is governed by ORS 30.900 to 30.920. *See Griffith v. Blatt*, 334 Or 456, 466, 51 P3d 1256 (2002). ORS 30.900 sets forth the definition of a product liability civil action:

> "As used in ORS 30.900 to 30.920, 'product liability civil action' means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:
>
> "(1)  Any design, inspection, testing, manufacturing or other defect in a product;
>
> "(2)  Any failure to warn regarding a product; or
>
> "(3)  Any failure to properly instruct in the use of a product."

A "product liability civil action" is subject to statutory policies on the time to commence that action (ORS 30.905, ORS 30.907, and ORS 30.908), an applicable evidentiary presumption (ORS 30.910), defenses to the claim (ORS 30.915), and recoverable punitive damages (ORS 30.925 and ORS 30.927).

ORS 30.920, which sets out the elements of a *strict* product liability claim, provides:

> "(1)  One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer

---

[3] The "John Doe Corporations 1-5" are not named in the judgment and for that reason are not listed in the caption of this opinion.

or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a)   The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b)   The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

"(2)   The rule stated in subsection (1) of this section shall apply, even though:

"(a)   The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b)   The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.

"(3)   It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965). All references in these comments to sale, sell, selling or seller shall be construed to include lease, leases, leasing and lessor.

"(4)   Nothing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence or under ORS chapter 72."

■     A "product liability civil action," as defined by ORS 30.900, is not confined to a strict liability claim under ORS 30.920 and can include negligence claims within its scope. *See Kambury v. DaimlerChrysler Corp.*, 185 Or App 635, 639, 60 P3d 1103 (2003) (a product liability civil action "embraces all theories a plaintiff can claim in an action based on a product defect," including both negligence and strict liability claims); *Gladhart v. Oregon Vineyard Supply Co.*, 164 Or App 438, 458-59, 994 P2d 134 (1999), *rev'd on other grounds*, 332 Or 226, 26 P3d 817 (2001) (when the gravamen of a claim is a product defect, the statutory scheme that pertains to defective products applies); *Marinelli v. Ford Motor Co.*, 72 Or App 268, 273, 696 P2d 1, *rev den*, 299 Or 251 (1985) (accepting view that "the term 'product liability civil action,' as defined by ORS 30.900, embraces *all* theories a plaintiff can adduce

in an action based on a product defect" (emphasis in original)).

As noted above, a special statute of limitations applies to product liability civil actions for damages resulting from asbestos-related diseases. At the time relevant to this case, ORS 30.907 (2003) provided:

> "A product liability civil action for damages resulting from asbestos-related disease shall be commenced not later than two years after the date on which the plaintiff first discovered, or in the exercise of reasonable care should have discovered, the disease and the cause thereof."[4]

If a claim for damages resulting from asbestos-related disease is not a "product liability civil action" as defined by ORS 30.900, then the period of limitations for the claim is governed by a different statute of limitations, *e.g.*, ORS 12.115 (10-year statute of repose for negligence claims) and ORS 12.080 (six-year period for breach of contractual warranty). The parties agree that plaintiff's claims are stale unless they are "product liability civil actions" and fit within the definition of that term in ORS 30.900. Thus, the initial question that we must address is whether plaintiff's negligence and strict liability claims are "product liability civil actions" under ORS 30.900 because they state "a civil action brought against a manufacturer, distributor, [or] seller * * * of a product for damages * * * arising out of" a product defect, failure to warn, or failure to instruct in the use of a product.

■ The first issue is whether plaintiff's third claim for relief, the direct negligence claim against GE, is such a "product liability civil action." Plaintiff asserts that its direct negligence claim against GE qualifies under ORS 30.900 as an "action brought against a manufacturer, distributor [or] seller" in two ways. Plaintiff first contends that GE was a "distributor" of the asbestos-containing products because GE directed that the recycled products be reused. Plaintiff further contends that GE was "a manufacturer" of the defective

---

[4] ORS 30.907 was amended in 2005 to add policies concerning asbestos product liability claims against contractors. Or Laws 2005, ch 740. The amendment does not apply to civil actions commenced before January 1, 2006. The case under review was commenced in August 2005.

products under ORS 30.900 because GE manufactured defective products that were similar to the ones that injured plaintiff's decedent.

We determine the meaning of "action brought against a manufacturer, distributor [or] seller" using the familiar principles in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), under which legislative intent is determined in light of the text and context of the statutory provision. If the meaning of the statute is ambiguous after examination of its text and context, the legislative history of the provision and substantive canons of construction can be used to resolve any remaining ambiguity. In construing the meaning of the quoted phrase, we first assume that a word used in different parts of the products liability law, ORS 30.900 to 30.927, has the same meaning throughout the law. *See Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005) ("When the legislature uses the identical phrase in related statutory provisions that were enacted as * * * part of the same law, we interpret the phrase to have the same meaning in both sections.").

We interpret, then, the terms "manufacturer, distributor, seller, or lessor" in the ORS 30.900 definition of a "product liability civil action" to have the same meaning as those terms in ORS 30.920, a statute that defines a particular "product liability civil action," that is, one imposing liability without fault. Both statutes define the nature of a product liability claim and operate *in pari materia*. Thus, a "seller" of a defective product for purposes of ORS 30.920 is the same type of person or entity as a "seller" of a defective product that is referenced in ORS 30.900. Similarly, a "manufacturer" or "distributor" of a defective product under ORS 30.900 is the same type of person or entity that is culpable under ORS 30.920 and its incorporated provisions of the *Restatement (Second) of Torts* § 402A comments a to m (1965). The categories of culpable defendants in both statutes are congruous.

We reject plaintiff's contention that GE was a "distributor" of asbestos-containing products under ORS 30.900 because it directed Mason's employer to use those products. The "distributor" of a product, a word of common usage, is to

be given its "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. *Webster's Third New Int'l Dictionary* 660 (unabridged ed 2002) defines "distributor" as "one that markets a commodity; *esp* : WHOLESALER."

That meaning of "distributor," as an intermediary commercial seller of a product, is the same meaning given to "distributor" as a type of "seller" under ORS 30.920. ORS 30.920(1) makes "[o]ne who sells or leases" an unreasonably dangerous defective product liable for harm to the ultimate user or consumer of the product. ORS 30.920(3) requires that ORS 30.920(1) "be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965)." Comment f to that part of the *Restatement* provides:

> "*f. Business of selling.* The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, *to any wholesale or retail dealer or distributor,* and to the operator of a restaurant. * * *
>
> "The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. * * * The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence."

(Emphasis added.) Thus, in making a solitary and noncommercial reuse of asbestos-containing products, GE did not act as a "distributor" of those products under either ORS 30.920 or ORS 30.900. Plaintiff's negligence claim that is based on GE's occasional and noncommercial actions is not a "product liability civil action" under ORS 30.900, so as qualify for the statute of limitations allowed by ORS 30.907.[5]

---

[5] We do not determine whether GE could be accountable in negligence for the directed use of the asbestos-containing products. That issue is not before the court. We decide only that plaintiff's negligence claim in that regard is not a

By the same logic, we reject plaintiff's categorization of GE as "a manufacturer" under ORS 30.900 because GE manufactured other, asbestos-containing products than the ones that harmed Mason. A "manufacturer" under ORS 30.900 is the same manufacturing entity as a person who is otherwise strictly liable for the harm caused by a defective product under ORS 30.920 or culpable under the common law or another statute for that harm. The strict liability in tort that is defined by ORS 30.920 is confined to a seller (including a manufacturer) or lessor of a product that has harmed a user or consumer *of that product*. Comment a to the *Restatement* at § 402A provides that the section (and ORS 30.920) "states a special rule applicable to sellers of products. The rule is one of strict liability, making the seller subject to liability to the user or consumer even though [the seller] has exercised all possible care in the preparation and sale *of the product*." (Emphasis added.) The "sale of the product" and "seller" refers to the sale of the product causing the harm, not some different product as plaintiff suggests.

Comment c to the *Restatement* at § 420A confirms that strict liability extends only to the seller (and manufacturer) of the product causing the harm. That comment notes:

> "On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing [the] product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone; and the proper persons to afford it are those who market the products."

---

"product liability civil action" as defined by ORS 30.900 because it is not brought against a "distributor." That determination affects the period of time within which the claim must be filed under ORS 12.115 and ORS 30.907.

Thus, strict liability extends under ORS 30.920 to "those who market the products" causing the harm under principles of causation and risk-spreading. As we have noted, "manufacturer," as that term is used in the *Restatement* comments and ORS 30.920, is the intended meaning of "manufacturer" as used in ORS 30.900. That common meaning of a manufacturer is a "seller" of the defective product, one who "markets" that product, and not a manufacturer of a different product. A "product liability civil action" under ORS 30.900 against "a manufacturer" does not include *any* manufacturer of the type of product at issue; it means a manufacturer of the product who is otherwise liable for its condition. Plaintiff advances no other common-law or other statutory policy that imposes liability for a defective product on a disassociated manufacturer. Under the facts pleaded in the second amended complaint, then, GE is not a "manufacturer" under ORS 30.900, ORS 30.907 does not apply, and the trial court did not err in dismissing plaintiff's third claim for relief as untimely under ORS 12.115.

For the same reasons, GE is not a "seller" or "distributor" under ORS 30.900, for purposes of applying ORS 30.907 to its vicarious liability claims for relief. In her fourth and eighth claims for relief, plaintiff alleged that GE was negligently or strictly liable for the sale and distribution of the asbestos-containing products, because it enabled the sale of those products by the John Doe defendants. In particular, plaintiff contended in her fourth claim that the five unidentified John Doe defendants sold or distributed unreasonably dangerous and defective asbestos-containing products, in violation of ORS 30.920. Plaintiff further contended that GE acted jointly and became strictly liable with those defendants when it "aided, commanded, advised and countenanced the sale," "acted in concert" with the sellers, and "substantially assisted or encouraged the sale" of those products by "contractually requiring construction contractors to purchase and install specific asbestos-containing products" and to "reuse specific asbestos-containing products." Based on the same allegations of joint conduct, the eighth claim alleged that GE was vicariously liable for the negligence of those defendants in failing to provide warnings of the products and failing to instruct users of the products of their safe use.

■   Plaintiff characterizes her fourth and eighth claims as common-law claims for vicarious liability based on joint conduct. She does not dispute, however, that the underlying conduct on which her claim is based is the sale of a defective product by the John Doe defendants and that this must be a "product liability civil action" to avoid the time bar of ORS 12.115. She asserts that, although GE is not one of the entities against whom such a claim may be brought directly—because it is not the seller of a defective product—GE is nonetheless liable for the actions of the five John Doe defendants under common-law principles of vicarious liability, having acted jointly or in concert with them in the sale of the product.

Plaintiff points out that, in *Granewich v. Harding*, 329 Or 47, 53, 985 P2d 788 (1999), citing the *Restatement (Second) of Torts* (1979), the Supreme Court recognized the concept of "joint liability" as a theory under which liability may be imposed on one who aids or acts in concert with another in the commission of a tort.[6] Plaintiff further cites cases that she says have implicitly recognized the applicability of vicarious liability in the context of statutory strict liability torts. *Graham v. State of Oregon*, 164 Or App 747, 762, 995 P2d 1167 (2000); *Johnston v. Water Sausage Corp.*, 83 Or App 637, 641, 733 P2d 59, *rev den*, 303 Or 590 (1987). Plaintiff argues that there is no reason why that principle should

---

[6] In *Granewich*, 329 Or at 53-54, the court stated:

"Section 876 of the *Restatement (Second) of Torts* (1979) (*Restatement*) sets out three ways in which persons acting in concert may be held accountable for each other's tortious conduct:

" 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

" '(a)  does a tortious act in concert with the other or pursuant to a common design with him, or

" '(b)  knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

" '(c)  gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.'

"Each of the three foregoing statements already is reflected in existing Oregon case law governing the liability of persons acting in concert. Therefore, to state that this court recognizes section 876 as reflecting the common law of Oregon breaks no new ground."

not apply to impose liability on a defendant acting jointly or in concert with an entity whose conduct is tortious under ORS 30.900 to 30.920. Citing her allegations that GE acted in concert with the John Doe defendants by requiring the use of asbestos-containing materials in its construction, plaintiff contends that she has stated a product liability claim against GE based on vicarious liability, permitting GE to be held liable for harm sustained as a result of the John Doe defendants' sale of the defective products.

The allegations of plaintiff's vicarious liability claims have the same deficiency as her direct negligence claim—they fail to allege that GE was engaged in the commercial marketing of the defective products, so as to qualify as a "seller" under ORS 30.920 and as a "seller" or "distributor" under ORS 30.900. We have confined liability under ORS 30.920 to sellers and lessors of defective products and have not included those who are indirectly involved in the distribution of the product as within the statute's ambit. In *Johnston*, the plaintiff brought claims under ORS 30.920 for damages resulting from a defective toy purchased at a wholesale gift show. The defendant was the promoter and operator of the gift show, who sold memberships to the show. A membership allowed a person to rent a booth and sell products. The plaintiff asserted that the defendant was directly liable under ORS 30.920 because its business was part of the "marketing enterprise" for the toy, and, alternatively that the defendant was vicariously liable for the liability of its member seller under ORS 30.920.

We held that the defendant was not liable either directly or vicariously as a "seller" or "distributor" under ORS 30.920. We first noted that the text of ORS 30.920 limits its reach to "sellers" and "lessors," and that the legislature "did not extend the remedy to non-seller distributors of defective products." *Johnston*, 83 Or App at 641.[7] We then concluded that vicarious liability would attach only to those on whose behalf the product was sold or leased.

---

[7] *See also Watts v. Rubber Tree, Inc.*, 118 Or App 557, 848 P2d 1210, *modified on recons*, 121 Or App 21, 853 P2d 1365, *rev den*, 317 Or 272 (1993) (only one who "sells" a defective product may be strictly liable under ORS 30.920).

"Plaintiff's contention that defendant is strictly liable, because it is vicariously liable for the strict liability of the concessionaire which sold the toy, is not supported by the record. Plaintiff's contention is based on the assumption that an agency relationship existed between defendant and the seller of the toy. However, viewing the record in the light most favorable to plaintiff, including all reasonable inferences of fact to be drawn therefrom, there simply is no evidence that the seller of the water sausage toy was or appeared to be acting on behalf of defendant. Accordingly, the trial court did not err in granting defendant's motion for summary judgment with respect to plaintiff's strict liability claims."

' *Id.*

Similarly, the allegations of plaintiff's second amended complaint do not support such a theory. Plaintiff's complaint alleges that GE "aided, commanded, advised and countenanced the negligent sale and distribution" of the defective asbestos-containing products; however, there is no allegation from which it can be inferred that GE sold the asbestos-containing products or that the John Doe defendants acted as GE's agent *in selling* the asbestos-containing products to the construction contractors, creating potential liability in GE as a seller. To the extent that tort liability may be imposed on one who acts "in concert" with a tortfeasor, *see Granewich*, 329 Or at 54, the person acting in concert must be connected to the tortious conduct that gives rise to liability. *See, e.g., Sprinkle v. Lemley*, 243 Or 521, 414 P2d 797 (1966) (patient injured by doctor's negligence sued both the general practitioner who treated her and the specialist called in to assist him). Here, GE's conduct in *purchasing* the asbestos-containing products or directing Mason's employer to use or purchase those products cannot reasonably be viewed as the *selling* of those products.

Because the complaint does not allege facts sufficient to classify GE as a "seller" under ORS 30.920, its allegations are insufficient to bring GE within the categories of "seller" or "distributor" under ORS 30.900, whether the underlying theory of liability is negligence, strict liability as a seller or distributor, or vicarious liability with a seller or distributor. Because the complaint does not allege that GE

manufactured, distributed, or sold the asbestos-containing product, plaintiff has not stated a claim for a product liability civil action.

Affirmed.